MARY ROBLES, as Adm'r of the Estate of Ralph Robles, Deceased, Plaintiff-Appellant, v. CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 87—2889

Opinion filed June 28, 1988.—Rehearing denied September 6, 1988.

Alvin W. Block and Russell C. Green, both of Block, Levy & Associates, of Chicago, for appellant.

Joyce A. Hughes, of Chicago Transit Authority, and Richard T. Ryan, of Flynn, Murphy & Ryan, both of Chicago, for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

This action was brought to recover damages incurred as a result of the alleged negligence of defendant Ernest Brown in operating a Chicago Transit Authority (CTA) bus and the alleged negligence of defendant CTA as the owner of the bus and employer of Brown. The trial court directed verdicts in favor of defendants on counts II and IV of plaintiff's second amended complaint, and the jury returned a verdict in favor of the defendants on the remaining counts. Plaintiff appeals, raising the following issues: (1) whether the trial court erred in denying plaintiff's motion for judgment notwithstanding the verdict and her motion for a new trial; (2) whether the trial court erred in

directing verdicts for the defendants on counts II and IV; (3) whether the trial court erred in refusing to permit plaintiff to call Donald Corbin as an adverse witness in rebuttal; (4) whether the trial court submitted an improper burden of proof instruction to the jury; (5) whether the trial court abused its discretion in limiting the testimony of plaintiff's expert; and (6) whether plaintiff was denied a fair trial by the trial court's rulings on numerous procedural and evidentiary questions.

On December 17, 1980, the decedent, Ralph Robles, was struck by a CTA bus driven by defendant, Ernest Brown. Plaintiff, Mary Robles, as administrator of decedent's estate, brought wrongful death and survival actions based on specific negligence and *res ipsa loquitur* against defendants. A previous action resulted in a mistrial.

A review of the record reveals that the following evidence was adduced at trial. Michael Ramierez, Mark Perez, Richard Pedraza and Russell Olmos, friends of the decedent, were riding on the bus with him at the time of his accident. Each testified that they boarded a bus at 103rd Street and Ewing, to avoid the crowd waiting at the bus stop at 102nd and Ewing. When the bus stopped at 102nd and Ewing, a large number of people boarded and Robles, Ramierez, Pedraza and Olmos decided to alight. Their reason for so doing is not clear from the testimony, but it is suggested that one of the group saw someone at the bus stop with whom he wanted to speak. Pedraza exited the bus in front of Robles, and Ramierez and Olmos were behind him. All three testified that the doors were open as Robles stepped out of the bus, but before he was safely off it began to accelerate. Robles fell to the ground and was run over. They also testified that passengers were screaming, but the bus continued until the end of the block before stopping.

In addition, Ramierez and Olmos both testified that after Robles' accident they reached up to pull the emergency knob to stop the bus, but the knob was missing. On cross-examination Perez testified that he had heard that the others got off the bus in order to talk with someone about a fight over a girl's stolen necklace.

Nicholas Vega was waiting at the bus stop at 102nd and Ewing when he saw Robles exiting the bus through the rear doors. As Robles tried to leave the bus it started to move and his feet caught under the tire, pulling his body underneath the bus. Vega testified that the rear doors of the bus were open while it was moving. He also admitted having heard rumors about a fight or argument earlier in the day regarding a girl's stolen necklace.

Gloria Arroyo boarded the bus at 102nd Street and saw a number

of people exit through the rear doors ahead of Robles. She stated that she did not see the doors close while these people were exiting. As Robles was about to step off the bus it began moving, his jacket became caught and he was run over.

Ernest Brown, the driver of the bus, testified that a loud and rowdy group of students boarded his bus at 102nd and Ewing. They entered through the front door of the bus, which he opened using a control handle located to the left side of the driver. Before pulling away from the bus stop he checked the mirror located to the right of the driver on the outside of the bus and saw that the rear doors were not open. As Brown proceeded north and the front end of the bus reached the intersection he lost acceleration, heard the interlock plunger hit the gas pedal and felt a bump, "like hitting a hole in the street." The interlock is a plunger that locks the gas pedal, preventing the driver from accelerating when the rear doors of the bus are unlocked. The acceleration returned, and Brown continued to midblock, until a passenger touched him on the shoulder and told him that there had been an accident. He testified that losing acceleration as he did meant that someone had pulled the emergency lever in the back of the bus, and that when the acceleration returned, someone had pushed the emergency lever back up.

The parties stipulated that at the taking of his deposition, Brown testified that when he stopped the bus at 102nd Street a red light on the dashboard was on, indicating that the front door was open. However, testimony at trial revealed that some buses are equipped with two lights, one for each door, and other buses have only one light, which indicates when the rear doors are unlocked. The bus Brown was driving at the time of the accident had only one light, for the rear doors. At trial, Brown testified that there were no lights on as people boarded the bus.

Eva Sanchez was sitting in the second seat behind the rear door of the bus on the day of the accident. She testified that a number of high school students boarded the bus at 102nd and Ewing and that the bus filled up. As the front doors closed and the bus started there was a commotion; one boy pulled a knife while another boy ran away from him, pulled the emergency knob, pushed the rear doors open and jumped off the bus. A few seconds later Sanchez felt the bus go over a bump, and a few seconds after that the bus stopped. She testified that when the bus left the bus stop the back doors were closed and that the bus had travelled through the intersection before the boy pulled the emergency ball and jumped off.

Earl Jones, a CTA garage foreman, testified that the bus in ques-

tion had been inspected on November 22, 1980, approximately three weeks prior to the accident, and there was no indication at that time of a problem with the interlock system. An inspection completed on December 22, 1980, five days after the accident, also failed to find any problem with the rear doors. Jones also testified that if the interlock system was working properly, "there is no way the driver could depress the gas pedal and move the bus" while the rear door was open, unlocked, or if the emergency handle was pulled.

Donald Corbin, a CTA supervisor, arrived at the scene shortly after the accident. Corbin testified that Brown told him that he had lost power and the interlock system had come on, and that as he pulled away from the bus stop and went into the intersection, he felt a bump and his power came back. Brown also told him that someone had "pulled the emergency knob." Corbin wrote in his report that Brown said the accident happened in midblock, where the bus was stopped when Corbin arrived at the scene, but at trial Corbin testified that he had made a misstatement in his report and should have written "mid-intersection" rather than "mid-block."

The trial court directed verdicts in favor of defendants on counts II and IV of plaintiff's second amended complaint, which are wrongful death and survival actions based on *res ipsa*, and the jury returned a verdict for defendants on the remaining counts. The trial court denied plaintiff's post-trial motions, and she appeals.

I

■■ ■ Judgment notwithstanding the verdict should be granted only when the evidence and reasonable inferences therefrom, when viewed in a light most favorable to the opponent, so overwhelmingly favor the movant that the jury's verdict cannot stand. (*Mort v. Walter* (1983), 98 Ill. 2d 391, 396, 457 N.E.2d 18; *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) Plaintiff contends that most of the witnesses testified that the accident occurred as she described, specifically that the bus was stopped when Robles attempted to exit through the rear doors and that it started moving while the rear doors were open. She further argues that Eva Sanchez gave "inherently inconsistent and unreliable testimony," and claims that "[w]hile weighing credibility is certainly within the province of the jury, it is not permissible to totally disregard and totally ignore such a large bulk of evidence as presented on behalf of Plaintiff." The defense responds that the jury resolved the conflicting testimony in favor of defendants, and its verdict was not unreasonable, arbitrary or palpably erroneous. *Pietka v. Chelco Corp.* (1982), 107 Ill.

App. 3d 544, 553, 437 N.E.2d 872.

Plaintiff also maintains that the trial judge should have ordered a new trial, because the jury's verdict was against the manifest weight of the evidence. Defendants contend that the jury's verdict was supported by the testimony of Sanchez and Brown, and the verdict should not be disturbed on appeal. *Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 476 N.E.2d 1232.

It is well-settled law that the weight of the evidence does not depend on the number of witnesses testifying (*B. F. Gump Co. v. Industrial Comm'n* (1952), 411 Ill. 196, 199, 103 N.E.2d 504), and the fact that a party produced more witnesses does not require the jury to accept that party's version of the facts. (*Greig v. Griffel* (1977), 49 Ill. App. 3d 829, 848-49, 364 N.E.2d 660.) The jury's verdict was not improper or contrary to the manifest weight of the evidence, and the trial judge's denial of both post-trial motions was proper.

## II

In counts II and IV of her second amended complaint plaintiff alleged that the defendants had exclusive and sole control, that the decedent exercised no control over the bus, and also that

"[t]he occurrence speaks for itself; that is, the occurrence would not have taken place in the ordinary course of things if the Defendants had not negligently failed to use proper care in the direction, control, operation, management and maintenance of the subject bus, which was under the Defendants' exclusive control, direction, operation, management and maintenance."

In her brief, plaintiff claims that there was confusion at the trial level, and that although the judge expressed his views on the subject, he never ruled on defendants' motion for a directed verdict. However, a review of the record indicates that the judge clearly granted defendants directed verdicts on counts II and IV. The judge had the following colloquy with plaintiff's attorney:

"THE COURT: Your argument is the interlock system was defective?

MR. COHEN: One of the arguments.

THE COURT: And that's your basis for the *res ipsa* logic or intention?

MR. COHEN: But for the failure of the interlock system, the accident would not and could not have happened as the witnesses testified that it happened.

\* \* \*

THE COURT: You have no evidence in this case to my

knowledge, direct evidence of the defect. Mr. Ryan's motion will be granted on relationship of counts two and four."

In denying plaintiff's motion for reconsideration the court stated:

"Any question, however, in this case, the test pertinent to this Court is [the] second element[,] if the party charged used proper care.

Other speculation[,] we've no evidence that the interlock system was in no way defective to show the CTA was using improper care.

I have no reason to overturn my decision."

As we have already noted above, verdicts should be directed "only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on the evidence could stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) Plaintiff contends that she did not have to present direct evidence of defendants' negligence in order to prove liability under the doctrine of *res ipsa loquitur* (*Fugate v. Sears, Roebuck & Co.* (1973), 12 Ill. App. 3d 656, 299 N.E.2d 108; *Erckman v. Northern Illinois Gas Co.* (1965), 61 Ill. App. 2d 137, 210 N.E.2d 42), and argues that there was ample circumstantial evidence under which a jury could find that the interlock system was defective. Plaintiff relies on Earl Jones' testimony that if the interlock system was working properly, a driver would be unable to accelerate when the bus is stopped and the rear doors are open, as well as the testimony that the bus started moving while the decedent was attempting to exit through the rear doors at the bus stop.

Defendants argue that the rear doors of the bus were not under the exclusive control of either Brown or the CTA, and they also maintain that there was no circumstantial or direct evidence of a defect in the interlock system. They argue that there was no indication of a defect when the bus was inspected three weeks prior to the accident or in the inspection completed a week afterward, and they also rely on testimony that Robles pulled the emergency knob in support of their argument that the accident could and did occur absent a failure of the interlock system.

■ The doctrine of *res ipsa loquitur* allows the trier of fact to draw an inference of negligence on the part of defendants from circumstantial evidence provided plaintiff demonstrates the following: (1) the incident is one that ordinarily does not occur in the absence of negligence and (2) the defendants had exclusive control of the instrumentality that caused the injury. (*Dyback v. Weber* (1986), 114 Ill. 2d

232, 242, 500 N.E.2d 8; *Coffey v. Brodsky* (1987), 165 Ill. App. 3d 14, 22; Illinois Pattern Jury Instructions, Civil, No. 22.01 (2d ed. 1971); M. Polelle & B. Otley, Illinois Tort Law 429-30 (1985).) The inference of negligence by circumstantial evidence from otherwise inexplicable facts is particularly appropriate "when the direct evidence concerning the cause of injury is primarily within the knowledge and control of defendant." *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449, 207 N.E.2d 305; *Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345, 247 N.E.2d 877; M. Polelle & B. Otley, Illinois Tort Law 425, 426 (1985).

The Illinois Supreme Court has determined the procedural effect of *res ipsa* to be as follows:

"Like any other proof it may be explained or rebutted by the opposing party. And while there appears to be conflict in Illinois decisions as to whether the presumption or inference of negligence raised by the doctrine of *res ipsa loquitur* vanishes entirely when any evidence appears to the contrary, the more recent, the more studied, and the more just view is that the inference, or presumption, does not simply vanish or disappear when contrary evidence appears, but remains to be considered with all the other evidence in the case and must be weighed by the jury against the direct evidence offered by the party charged.

\* \* \*

Whether the doctrine [of *res ipsa loquitur*] applies in a given case is a question of law which must be decided by the court, but once this has been answered in the affirmative, it is for the trier of fact to weigh the evidence and determine whether the circumstantial evidence of negligence has been overcome by defendant's proof." *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449, 207 N.E.2d 305.

■ Here, there was testimony that the bus accelerated while the rear doors were open, and according to the CTA's garage foreman that should have not occurred if the interlock system was functioning properly. Further, defendants drove and maintained the bus and thus had control over it; the fact that Robles was able to open the rear doors does not negate the control defendants had over the bus. (*Douglas v. Board of Education* (1984), 127 Ill. App. 3d 79, 468 N.E.2d 473.)

"A plaintiff need not conclusively prove all the elements of *res ipsa loquitur* in order to invoke the doctrine. He need only present evidence reasonably showing that [the requisite] ele-

ments exist." *Dyback v. Weber* (1986), 114 Ill. 2d 232, 242.

Since there was sufficient evidence from which the jury could have inferred negligence, the trial court erred in directing verdicts for defendants on the *res ipsa* counts. This part of the case must be remanded for a new trial.

### III

■ Plaintiff sought to call Donald Corbin, a CTA supervisor, as an adverse witness pursuant to section 2—1102 of the Code of Civil Procedure, which provides in part as follows:

"Upon the trial of any case any party thereto or any person for whose immediate benefit the action is prosecuted or defended, or the officers, directors, managing agents or foreman of any party to the action, may be called and examined as if under cross-examination at the instance of any adverse party." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1102.)

Plaintiff argues that Corbin holds a position as specified in the statute and that, as a consequence of the restrictions placed on her attorney's examination of Corbin, he was "unable to make an effective interrogation of the witness."

At a conference between the trial judge and the attorneys for both parties plaintiff's counsel expressed his intent to call Corbin as a rebuttal witness. Defense counsel objected and the trial court ruled:

"My statement from you, sir, is that it is a rebuttal witness and I'm accepting him as that, so he's going to be your witness."

Later, plaintiff's counsel sought to call Corbin as an adverse witness in rebuttal. Defense counsel again objected, arguing that pursuant to plaintiff's earlier motion the trial court had determined that Corbin was a witness after the occurrence and was not speaking for either the CTA or Brown, was therefore not a party or agent of a party, and thus the statement made by Corbin was discoverable. The court then held that on the basis of its prior determination allowing plaintiff to have the statement Corbin would be called as plaintiff's witness and not as an adverse witness. The motion and ruling in issue do not appear in the record on appeal.

It is the responsibility of the appellant to present a sufficiently complete record of the proceedings in the trial court to support a claim of error and, in the absence of such a record, it will be presumed that the trial court acted in conformity with the law and that it had a sufficient factual basis for its rulings. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92, 459 N.E.2d 958; *Wyman-Gordon Co. v. Bernardi* (1985), 135 Ill. App. 3d 685, 689, 481 N.E.2d 1285.) Here,

because neither the motion nor a transcript of the hearing is included in the record, we do not know the basis for the trial judge's ruling and we must therefore assume that it is correct. We so hold.

## IV

■ Plaintiff contends that the trial court improperly refused her burden of proof instruction and that the modified instruction given to the jury "grossly misstates the law." Plaintiff has filed a supplementary record which consists of what appears to be her counsel's "working papers" from the instruction conference. She complains of instruction number 18, included in the supplementary record, which states in part as follows:

> "Third, that the negligence of the defendants was a proximate cause of the injury to the plaintiff. In this case the defendants have asserted the affirmative defense that Ralph Robles' failure to use due care for his own safety was the proximate cause of the accident and death. The defendant has the burden [sic] this defense."

Plaintiff claims that the paragraph on defendants' affirmative defense should read "Robles' failure to use due care for his own safety was the sole and exclusive proximate cause ***." She also claims that the last sentence of the final paragraph of this instruction, which reads:

> "[b]ut if on the other hand, you find from your consideration of all the evidence that any of the propositions required by the plaintiff has not been proved against both the Chicago Transit Authority and Ernest Brown, then the defendants are not liable and your verdict should be against the plaintiff and for the defendants,"

should include "[and Ernest Brown] or that Ralph Robles' failure to use due care for his own safety was the sole and proximate cause of the accident and death, [then ***]."

Defendants argue that plaintiff has provided an incomplete record, because the instructions in the record are copies of plaintiff's counsel's own records, and further contends that this court cannot make an informed review of this issue. Defendants also argue that it is not clear from the transcript of the instruction conference that plaintiff objected to the instruction as given.

As noted previously, any doubts arising from the incompleteness of an appellate court record must be resolved against the appellant. (*Marshall E. Winokur, Ltd. v. Shane* (1980), 89 Ill. App. 3d 551, 411 N.E.2d 1142.) Here, we are not provided with a transcribed or certified copy of the jury instructions, and, if plaintiff did have an objec-

tion to the jury instruction, she did not make it clearly. Plaintiff has not presented this court with a record sufficiently complete to support her claim of error; therefore the trial court is affirmed as to this issue.

## V

■ Plaintiff argues that the trial court erred in prohibiting her expert, Arlyne Saskill, from testifying about the grief and mental anguish of Robles' family, as well as their previous loss of another child. The trial court held that family members were the most appropriate witnesses to testify as to their grief, and also held that their loss of another child was not material to issues in the present case. Plaintiff admits that damage issues were never reached by the jury, but claims that this court should reach this issue so that it will not arise again during a retrial. Defendants correctly contend that the trial court's ruling that a witness is not competent to render an expert opinion on an issue may be disturbed only upon a clear showing of an abuse of discretion (*Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1979), 68 Ill. App. 3d 75, 385 N.E.2d 376), which has not been demonstrated here; consequently, the trial court's ruling as to this issue is also affirmed.

## VI

■ Plaintiff claims that the trial court permitted hearsay from a number of witnesses: Donald Corbin, Nicholas Vega, Mark Perez and Ernest Brown. She also contends that the trial judge overruled objections to questions propounded to Russell Olmos and Nicholas Vega on cross-examination which were not impeaching. Plaintiff maintains that the trial court erred in admonishing her counsel to cease presenting cumulative testimony, claiming that this prejudiced her case because she refrained from calling three other occurrence witnesses, whose testimony would have influenced this court's decision on whether the jury's verdict was contrary to the manifest weight of the evidence. She also argues that the trial court erred in allowing defense counsel to allude during closing arguments to the fact that plaintiff filed survival actions only months before trial started. Finally, plaintiff lists a number of the trial court's other rulings which she claims were made in error. She concedes that each ruling taken separately might not warrant reversal, but claims that cumulatively they taint the fairness of her trial.

Defendants correctly contend that the parties are entitled to a fair trial, not a perfect one, and argue that the proper test is whether

prejudicial error affected the outcome of the trial. (*Yassin v. Certified Grocers of Illinois, Inc.* (1986), 150 Ill. App. 3d 1052, 502 N.E.2d 315.) Plaintiff has failed to demonstrate how the judge's rulings tainted the fairness of her trial, and therefore the trial court is affirmed on this issue.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed in part and reversed and remanded in part.

Affirmed in part; reversed and remanded in part.

HARTMAN, P.J., and BILANDIC, J., concur.