JANICE POOLE, Plaintiff-Appellant, v. UNIVERSITY OF CHICAGO, Defendant-Appellee.

First District (4th Division)   No. 1—87—2073

Opinion filed June 29, 1989.—Rehearing denied August 31, 1989.

Corboy & Demetrio, P.C., of Chicago (Philip H. Corboy, Thomas A. Demetrio, and Susan J. Schwartz, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (William C. Anderson III and Hugh Griffin, of counsel), for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Plaintiff Janice Poole (plaintiff) underwent subtotal thyroidectomy surgery performed by a physician employed by defendant University of Chicago (defendant). As a result of that surgery, plaintiff suffered permanent bilateral vocal cord paralysis that severely restricted her ability to breathe or speak. A jury in plaintiff's medical malpractice suit against defendant found that the surgeon had not been negligent in performing the surgery, and plaintiff appeals. Upon review, plaintiff contends that a *res ipsa loquitur* instruction should have been given to the jury and that defendant's improper cross-examination of plaintiff's expert witness constituted reversible error. We conclude that the trial court should have instructed the jury to consider *res ipsa loquitur* principles in plaintiff's negligence case against defendant. We further determine that plaintiff was prejudiced by defendant's improper cross-examination of plaintiff's expert witness at trial. As a result, we reverse and remand.

Plaintiff suffers from Graves' disease, a potentially fatal abnormality of the thyroid gland. As treatment for this condition, plaintiff underwent a subtotal thyroidectomy in June 1977 at defendant's hospital. In a subtotal thyroidectomy, a portion of the patient's thyroid is removed. The thyroid sits on both sides of the trachea and is connected across the trachea by a midline called the isthmus. Behind the thyroid, and running alongside the trachea, are the recurrent laryngeal nerves, which are responsible for innervation of the larynx and

the vocal cords.

Prior to the surgery, examination of plaintiff revealed that she had a slightly hoarse, basically good voice quality, with normal appearance and motion of the larynx and vocal cords. Following the surgery, examination disclosed that plaintiff's vocal cords were paralyzed in a position that caused decreased passage in her airway and prevented her from speaking. Plaintiff's bilateral vocal cord paralysis was caused during the surgery by damage to the recurrent laryngeal nerves.

The disputed issue at trial centered on the propriety of certain methods used to perform the surgery upon plaintiff. Plaintiff's expert witness at trial, Dr. Alvin Bakst, testified that there are two procedures commonly used in performing a subtotal thyroidectomy. One procedure is to clear the trachea in removing the thyroid gland. In this procedure, the surgeon transects or cuts the isthmus and removes that part of the thyroid located in front of the trachea, leaving the trachea clear, visible, and bare. A second procedure is to remove portions of the thyroid without clearing the trachea, *i.e.*, without removing that part of the thyroid situated in front of the trachea.

It was the expert opinion of Dr. Bakst at trial that a surgeon should locate and protect the recurrent laryngeal nerves when the surgery will include clearing of the trachea. It was also Dr. Bakst's expert opinion that the surgeon should not use electrocautery to control bleeding in the glandular area of the trachea near the recurrent laryngeal nerves. Based on the operative report of the subtotal thyroidectomy performed upon plaintiff, Dr. Bakst concluded that the surgeon who performed this surgery had cleared the trachea but had not located and protected the recurrent laryngeal nerves. Dr. Bakst also concluded that electrocautery had been used to control bleeding in the glandular area of the trachea near the recurrent laryngeal nerves.

Dr. Bakst recognized that vocal cord paralysis is a risk associated with subtotal thyroidectomy surgery and may occur without negligence on the part of the surgeon. However, Dr. Bakst also testified on direct examination that plaintiff's *bilateral* vocal cord paralysis ordinarily would not have occurred in the absence of a deviation from the standard of care. Dr. Bakst explained that bilateral vocal cord paralysis "implies there was a deviation somewhere during the operation procedure [because] bilateral [voice cord paralysis is] just too much to expect by chance."

On cross-examination, Dr. Bakst testified that bilateral vocal cord paralysis does not in all instances prove that the operating physician was negligent, and that bilateral vocal cord paralysis could be an un-

avoidable complication of the surgery. Dr. Bakst stated that if the trachea were not cleared during the surgery, and if electrocautery were not used to control bleeding in the glandular area of the trachea, then plaintiff's vocal cord paralysis would not have been the result of the surgeon's negligence, but would instead be an unfortunate complication of the surgical procedure.

On redirect examination, Dr. Bakst repeated his original testimony on direct examination that plaintiff's bilateral vocal cord paralysis ordinarily would not have resulted absent the operating physician's negligence, because the surgery was performed by clearing the trachea without locating and protecting the recurrent laryngeal nerves, and by the use of electrocautery to control bleeding in the glandular area of the trachea near the recurrent laryngeal nerves.

Dr. Bakst also stated that, in his opinion, both the failure to locate the recurrent laryngeal nerves in order to clear the trachea, and the use of electrocautery in the glandular area of the trachea, fell below the standard of care with respect to the performance of a subtotal thyroidectomy. It was Dr. Bakst's opinion that these deviations from the standard of care led to damage of plaintiff's recurrent laryngeal nerves during the surgery, and thereby proximately caused the permanent bilateral vocal cord paralysis plaintiff suffered following her surgery.

Dr. Edwin Kaplan, who performed the subtotal thyroidectomy upon plaintiff, explained at trial the procedures he followed to perform the surgery. He testified at trial that he did not locate or protect the recurrent laryngeal nerves and that he cleared the trachea by removing part of the thyroid in front of the trachea. He also testified that he used electrocautery to control bleeding in the glandular area of the trachea near the recurrent laryngeal nerves. Dr. Kaplan stated that in his opinion, these procedures were acceptable surgical methods at the time he performed plaintiff's subtotal thyroidectomy. Dr. Kaplan also stated at trial that he has since changed his operating procedure and now locates and protects the recurrent laryngeal nerves whenever the subtotal thyroidectomy will include a clearing of the gland from the trachea.

Dr. Norman Thompson, defendant's expert witness at trial, testified that it was medically and surgically acceptable not to locate and protect the recurrent laryngeal nerves in order to clear the trachea during a subtotal thyroidectomy. He further stated that in his opinion, plaintiff's bilateral vocal cord paralysis was an unfortunate complication that did not imply negligence on the part of the operating surgeon. Dr. Thompson gave no testimony regarding the propriety of

electrocautery to control bleeding in the glandular area of the trachea near the recurrent laryngeal nerves.

The trial court declined to instruct the jury regarding principles of *res ipsa loquitur*. The jury returned a verdict in favor of defendant, and plaintiff appeals.

Plaintiff argues that the trial court should have instructed the jury on *res ipsa loquitur*. We agree.

■■ "The doctrine of *res ipsa loquitur* allows the trier of fact to draw an inference of negligence from circumstantial evidence when direct evidence of the cause of the injury is primarily within the knowledge and control of the defendant." (*Clay v. Brodsky* (1986), 148 Ill. App. 3d 63, 70, 499 N.E.2d 68, citing *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 207 N.E.2d 305.) "[T]he doctrine is not a separate theory of liability [but] a type of circumstantial evidence which permits the trier of fact to infer negligence when the precise cause of injury is not known by the plaintiff." (*Briones v. Mobil Oil Corp.* (1986), 150 Ill. App. 3d 41, 45, 501 N.E.2d 821.) In order to establish a *prima facie* case of *res ipsa loquitur*, a plaintiff must demonstrate that "(1) the incident is one that ordinarily does not occur in the absence of negligence and (2) the defendants had exclusive control of the instrumentality that caused the injury." (*Robles v. Chicago Transit Authority* (1988), 173 Ill. App. 3d 46, 52, 527 N.E.2d 361, citing *Dyback v. Weber* (1986), 114 Ill. 2d 232, 242, 500 N.E.2d 8.) "A plaintiff need not conclusively prove all the elements of *res ipsa loquitur* in order to invoke the doctrine. He need only present evidence showing that elements exist ***." (*Dyback v. Weber*, 114 Ill. 2d at 242.) Thus "the inference, or presumption [of negligence], does not simply vanish or disappear when contrary evidence appears, but remains to be considered with all the other evidence in the case and must be weighed by the jury against the direct evidence offered by the party charged." *Metz v. Central Illinois Electric*, 32 Ill. 2d at 449.

Application of these principles recently led the Illinois Appellate Court to determine that a *res ipsa loquitur* instruction should have been given under circumstances similar to those of the case at bar. In *Coffey v. Brodsky* (1987), 165 Ill. App. 3d 14, 518 N.E.2d 638, *appeal denied* (1988), 119 Ill. 2d 554, plaintiff filed a medical malpractice action for injuries allegedly resulting from improper surgical procedures used during an abdominal hysterectomy. At a jury trial, the court directed a verdict in favor of the defendant with respect to plaintiff's *res ipsa loquitur* count, and the jury returned a verdict in favor of the defendant on plaintiff's specific negligence count.

In concluding that the trial court erred in directing a verdict for defendant on plaintiff's *res ipsa loquitur* count, the appellate court relied upon *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 397, 415 N.E.2d 397, in which the Illinois Supreme Court recognized that a plaintiff's introduction of evidence of defendant's specific acts of negligence does not deprive the plaintiff of "his right to rely on the doctrine of *res ipsa loquitur* where such specific evidence does not conclusively establish the cause of the injury." The appellate court also relied upon W. Prosser & W. Keeton, Torts section 40, at 260 (5th ed. 1984), which observes that "the introduction of some evidence which tends to show specific acts of negligence on the part of the defendant, but which does not purport to furnish a full and complete explanation of the occurrence, does not destroy the inferences which are consistent with the evidence, and so does not deprive the plaintiff of the benefit of res ipsa loquitur." Based upon these precedents, the appellate court concluded that the jury should have been instructed with respect to *res ipsa loquitur*, reasoning that the plaintiff's evidence "eliminated any inference of other causes, but strengthened the inference that defendant did not use due care." *Coffey*, 165 Ill. App. 3d at 24.

■ We also conclude that the jury in the instant cause should have been instructed regarding principles of *res ipsa loquitur*, as plaintiff's evidence in the instant case did not conclusively establish the cause of her injury. Plaintiff's position at trial, undisputed by the defendant, was that the bilateral vocal cord paralysis had been caused by damage to the recurrent laryngeal nerves during the subtotal thyroidectomy. However, as the court noted in *Coffey v. Brodsky*, "[d]etermining the cause of the injury does not answer the question whether the injury is the type of occurrence that ordinarily happens in the absence of negligence[,] [and] [b]oth parties produced expert witnesses who differed in their views on this issue." 165 Ill. App. 3d at 24.

Although defendant did not dispute that plaintiff's bilateral vocal cord paralysis had resulted from damage to the recurrent laryngeal nerves during the surgery, defendant's expert testified that plaintiff's paralysis was an unfortunate complication of the surgery that did not imply malpractice on the part of the surgeon. Plaintiff's expert testified that the plaintiff's bilateral vocal cord paralysis ordinarily would not have occurred absent negligence on the part of the operating physician in clearing the trachea without locating and protecting the recurrent laryngeal nerves and in using electrocautery to control bleeding in the glandular area of the trachea. Thus, plaintiff's evidence in

the case at bar established that her bilateral vocal cord paralysis resulted from damage to her recurrent laryngeal nerves, but did not conclusively prove how or why the nerves were damaged. Accordingly, we determine that the trial court should have instructed the jury regarding *res ipsa loquitur* in the instant cause and therefore reverse the court's judgment and remand the matter for a new trial.

■ Defendant argues that the *res ipsa loquitur* instruction issue has not been preserved for review because the record does not include the *res ipsa loquitur* instruction plaintiff tendered to the trial court. The record clearly shows that plaintiff tendered a *res ipsa loquitur* instruction to the trial court, that defendant objected on the ground that the facts did not support a *res ipsa loquitur* instruction, and that the trial court excluded the instruction based upon defendant's argument. In her post-trial motion, plaintiff renewed her contention that the *res ipsa loquitur* instruction should have been given, and she raises that claim again on appeal. Accordingly, we find that the question has been properly preserved for review. Defendant also argues that plaintiff did not tender a standard *res ipsa loquitur* instruction, but we do not address this contention since it was not presented to the trial court and is accordingly waived on appeal.

We also determine that plaintiff was prejudiced by improper cross-examination of her expert witness. The record shows that during cross-examination of Dr. Bakst, defense counsel asked the physician whether he had ever been the subject of any medical disciplinary proceedings in California since 1977. Dr. Bakst responded that he had not. Defense counsel then tendered to Dr. Bakst a document dated November 1985 that had been filed by the California State medical licensing board against Dr. Bakst. At the time of trial, this November 1985 disciplinary matter was still pending final disposition by the board. Defense counsel then elicited from the witness affirmative responses that the document contained certain specific allegations of incompetence on the part of Dr. Bakst. Counsel for plaintiff objected to this line of cross-examination.

The trial court allowed to remain in evidence both Dr. Bakst's statement that he had not been the subject of medical disciplinary proceedings since 1977 and the identification of the November 1985 disciplinary charge against Dr. Bakst. At plaintiff's request, the trial court admonished the jury to disregard the details of any of the accusations contained in the November 1985 California disciplinary charge against Dr. Bakst. During closing argument, defense counsel referred to plaintiff's expert as a "liar" and a "prostitute," and directed the jury's attention to the November 1985 California medical disciplinary

charge in which, according to defense counsel, Dr. Bakst was accused of "incompetence."

█ Initially, we note that defense counsel improperly impeached Dr. Bakst during cross-examination following Dr. Bakst's denial of the pending November 1985 California medical disciplinary charge. "Subject to the discretion of the judge in determining its relative value for such purpose, *** it is relevant and proper on cross-examination to inquire into collateral matters revealing the past conduct of the witness which tends to impeach his credibility ***." (S. Gard, Illinois Evidence Manual §22:12, at 449 (2d ed. 1979).) However, "[i]f the answer [regarding the witness' past conduct] is unsatisfactory to the cross-examiner because he believes or knows it to be untrue, he is nevertheless bound by it and cannot impeach the answer of the witness by other evidence." (S. Gard, Illinois Evidence Manual 450 (2d ed. 1979); see also *Kelley v. American Motors Corp.* (1985), 130 Ill. App. 3d 662, 675, 474 N.E.2d 814; *Pagel v. Yates* (1984), 128 Ill. App. 3d 897, 901, 471 N.E.2d 946; *Herget National Bank v. Johnson* (1974), 21 Ill. App. 3d 1024, 1028.) Dr. Bakst's denial of the pending medical disciplinary charge against him was a collateral matter in plaintiff's case against defendant, since the disciplinary charge was not a material issue in plaintiff's medical malpractice claim. As a result, once Dr. Bakst denied the existence of the pending disciplinary charge, defense counsel was bound by that denial and could not impeach Dr. Bakst's denial by producing a document purportedly setting forth the pending disciplinary claim.

Defense counsel compounded the error of his improper cross-examination of Dr. Bakst when defense counsel relied on this collateral pending disciplinary charge in his closing argument to the jury. In order to persuade the jury that plaintiff's expert was not credible, defense counsel drew the jury's attention to the pending medical disciplinary charge against Dr. Bakst, noted that the charges involved "incompetence" and accused Dr. Bakst of being a "liar" and a "prostitute." The prejudice to plaintiff is readily apparent. The jury's verdict would rest largely on its assessment of the comparative weight it would attach to the opinions of the parties' expert witnesses, and Dr. Bakst was plaintiff's only expert witness. Under these circumstances, defense counsel's actions may have improperly influenced the jury's assessment of the credibility of the testimony of plaintiff's expert witness, and we therefore conclude that plaintiff is entitled to a new trial. See, *e.g., Underwood v. Pennsylvania R.R. Co.* (1966), 34 Ill. 2d 367, 215 N.E.2d 236; *Babcock v. Chesapeake & Ohio Ry. Co.* (1979), 83 Ill. App. 3d 919, 404 N.E.2d 265.

562

For the reasons stated, the order of the trial court is reversed and the cause remanded for a new trial consistent with the views expressed herein.

Reversed and remanded.

JOHNSON and LINN, JJ., concur.