MARGARET DOLORES O'BRIEN, Adm'x of the Estate of Dennis E. O'Brien, Plaintiff-Appellant, v. JOHN MEYER *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—88—2687

Opinion filed December 21, 1989.—Modified on denial of rehearing May 10, 1990.

Christine E. Smith and John J. O'Connor, both of Chicago, for appellant.

French, Rogers, Kezelis & Kominiarek, P.C., and Lord, Bissell & Brook, both of Chicago (James M. Hofert, Russell P. Veldenz, William C. Anderson III, Hugh C. Griffin, and Diane I. Jennings, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Margaret Dolores O'Brien, brought a wrongful death and survival action based on the alleged medical malpractice of her deceased husband's doctors. Defendants are John Meyer, M.D., Meyer Medical Group, S.C., and Thomas R. Araujo, M.D. The jury returned verdicts in favor of all defendants. On appeal, O'Brien contends that numerous trial errors deprived her of a fair trial and that the jury's verdict is against the manifest weight of the evidence.

For the reasons that follow, we reverse and remand for a new trial.

BACKGROUND

The decedent, Dennis O'Brien, died of a virulent form of lung cancer that apparently grows very fast and has an extremely low survival rate regardless of when the cancer is discovered. Plaintiff's suit was based on the alleged failure of Dr. Meyer to diagnose her husband's condition while treating him. She also alleged that his record keeping fell below the standard of care. Dr. Araujo, she asserted, also deviated from the standard of care by failing to take a lateral X ray of the chest and by failing to obtain a history or receive communication from the treating physician.

Defendants produced testimony indicating that they did not deviate from the standard of care and that the X rays taken in January and May 1977 did not display any abnormalities or anything suggesting cancer. They also produced testimony to the effect that earlier detection of the cancer would not have extended the decedent's life.

The lengthy trial record need not be summarized in detail be-

cause our reversal for new trial concerns procedural errors and not the merits of the malpractice allegations.

The record indicates that the initial trial was aborted the day after the plaintiff's first witness, Dr. Clarence J. O'Reilly, testified. The trial court apparently believed that plaintiff had attempted to elicit from Dr. O'Reilly information going to the standard of care despite the fact that he had not been called as an expert witness. Defendants had not objected to his testimony, which related Dr. O'Reilly's treatment of the decedent in April 1978, as well as the decedent's disclosure of his prior treatment in 1977 at the hands of the two defendants. When the court stated its concerns with the testimony of Dr. O'Reilly, one of the defendants' attorneys only moved to strike and expressly stated he was not moving for mistrial. However, after extended comments by the court, defendants' attorneys moved for mistrial, which was granted.

Because of difficulties with witnesses' schedules, plaintiff's attorney agreed to proceed immediately with impanelling a new jury. In the course of the second trial, plaintiff elected not to call Dr. O'Reilly as a witness. Defendants, however, moved to read the previous testimony in court, except for the redirect and re-cross portions that the trial court had believed to be objectionable. Over plaintiff's objection, the court granted the motion.

Before trial, plaintiff made a motion *in limine*, seeking the preclusion of any references to the fact that her expert witness, a doctor licensed in Florida, had failed to pass the Illinois licensing examination on four occasions. Defendants sought to bar her testimony altogether on qualifications grounds. The court allowed the witness to testify and also allowed defendants to inform the jury of her past failures to pass the Illinois examination.

The jury returned verdicts in favor of all defendants.

OPINION

Plaintiff asserts several trial errors in support of her contention that she did not receive a fair trial.

I

The first three issues in her brief relate to the testimony of Dr. O'Reilly; the court's grant of mistrial based on that testimony; and defendants' subsequent use of part of the testimony in their own defense.

We believe that plaintiff raises a legitimate question as to the propriety of the mistrial and subsequent use of Dr. O'Reilly's trial

transcript. Our review of the record does indicate that the trial court virtually invited defendants' motion for mistrial when they had not objected to the testimony at the time it was given, nor voiced any particular problem with it the following day when the trial court expressed its own misgivings. The court believed that the plaintiff's attorney had improperly attempted to redirect examination to elicit testimony about record keeping, presumably in anticipation of challenging the sufficiency of Dr. Meyer's records concerning the decedent's care. Even then, one of the defense attorneys moved only to bar reference to the matter in closing argument. After an exchange on this issue, the same defense attorney stated that he could move for a mistrial but would not. After further argument during which the court told plaintiff's attorney that she had used her witness "improperly," the defense attorney moved for a mistrial and the other defendant's attorney joined. After additional discussion, the trial court granted the motion for mistrial.

Subsequently, defendants used Dr. O'Reilly's testimony in their case after plaintiff decided not to use him as a witness. The court allowed one of the defendant's attorneys to read the doctor's direct and cross-examination from the transcript of the first trial. Plaintiff objected to this procedure, arguing that she was prejudiced because the witness became one for the defense and she had no opportunity to cross-examine.

■ We believe that the trial procedure in this instance was improper. The mistrial apparently was occasioned by the trial court's belief that plaintiff's redirect examination of her witness elicited questions that might bear on Dr. Meyer's standard of care in keeping records relating to the decedent's treatment. Since Dr. O'Reilly was not listed as an expert witness, the court believed that the testimony in issue violated its order barring testimony of an expert witness whose identity was not disclosed before trial, pursuant to Supreme Court Rule 220(b)(1) (107 Ill. 2d R. 220(b)(1)).

Dr. O'Reilly, as a treating physician, need not have been disclosed as an expert unless he had been retained to render an opinion at trial. (*Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 529 N.E.2d 525.) From our review of the transcript of the testimony, we conclude that he did not give an opinion as an expert going to the standard of care that Dr. Meyer or Dr. Araujo owed to the decedent. To the extent the trial court believed that the plaintiff's attorney was attempting to "back door" some testimony on the standard of care, it may have been appropriate to strike the offending questions and instruct the jury to disregard them. Declaring a mistrial,

however, was unnecessary because defendants' attorneys did not object to the testimony. Plaintiff did not, in our opinion, actually violate the Rule 220 order.

■ Moreover, we believe that the prejudice to plaintiff was compounded when defendants were permitted, over objection, to read Dr. O'Reilly's direct and cross-examination into the record as part of their case. Plaintiff had chosen not to recall the doctor, who apparently was no longer available, and declined to use the partial transcript as part of her case. She was not allowed to present her redirect examination from the transcript. Nor was she given an opportunity to rehabilitate her own witness to the extent the defendants' use of the prior transcript was unfavorable to her case. We believe that this separation of the redirect and re-cross from the prior trial testimony rendered the transcript incomplete. See McCormick, Evidence §32, at 65 (2d ed. 1972) (referring to a "rule of completeness, which permits proof of the remainder of a transaction, conversation, or writing when a part thereof has been proved by the adversary *** [and] is often revoked by the re-examiner").

We conclude that the granting of the mistrial in this case, coupled with the defendants' use of the partial transcript of Dr. O'Reilly's testimony, was error. We need not determine whether, standing alone, it amounts to reversible error because we base our reversal on another ground.[1]

## II

Plaintiff contends that we should reverse the judgment because her expert witness, once determined qualified by the court to testify, should not have been asked questions regarding her failure to pass the Illinois licensing examination. She argues that the prejudicial impact of this revelation outweighs any probative value and that it was clearly immaterial.

We agree.

■ Before rendering an expert opinion, a witness must be qualified as an expert by the court. (S. Gard, 1 Illinois Evidence Manual 7:10, at 274 (1979) ("The trial judge in his discretion determines

---

[1]Defendants assert that plaintiff waived her objection to this use of the transcript when she agreed, following the grant of the mistrial, to the possibility that the direct and cross-examination could be used in the new trial. We do not find, however, that she intended to permit her witness' direct and cross-examination to be read in through the mouth of defense counsel, as part of defendants' case, where she was not afforded an opportunity to elicit further examination of the witness at that time.

from the qualifying inquiry whether the subject is a proper one for expert testimony and whether the witness is qualified by special knowledge, skill, or experience to express an opinion").) The opposing party has ample opportunity to *voir dire* the witness before he or she is allowed to render an opinion as an expert. The court, not the jury, determines whether the standards for qualification have been fulfilled. See *People v. Sawhill* (1921), 299 Ill. 393, 132 N.E.2d 477.

■ In the pending case, plaintiff's expert testified that she had been a physician since 1948 and practices in Florida. She is of German descent and knew little English when she first came to this country from Germany, where she attended medical school and had practiced until approximately 1955. In Germany she held a residency from 1950 to 1955 and obtained board certification in pulmonary disease. She had many cancer patients. Upon coming to the United States she worked as a resident exchange student at the Oak Forest tuberculosis sanitarium, which required her to read X rays and take medical histories. She had a residency at Cook County Hospital, mostly in lung disease and pulmonary diseases, from 1957 to 1961. She established a pulmonary function laboratory at Northwestern University during her two-year stay there. Over the next few years she also set up pulmonary function laboratories at Bethany Methodist Hospital, Ravenswood Hospital, and Illinois Central Railroad Hospital. She moved to Florida in 1969 and became licensed there as a medical doctor. One-third of her patients have cancer.

On cross-examination, she testified that she failed the Illinois licensing examination four times; that she never had an internship or residency in X rays or radiology; and that, although she reads her own X rays in the office, she defers to the radiologist in the hospital. She has had no formal training in the reading and interpreting of X rays. She stated that she failed the test in Illinois because she was not acquainted with multiple choice questions and because her knowledge of chemistry was limited.

The trial court held that she was qualified as an expert to testify, but denied plaintiff's motion to bar reference to her failures to pass the Illinois examination.

We believe that once the qualifying threshold has been met, attempts to impeach the expert's opinion should have a clear link to facts and assumptions underlying the opinion, the methodology or testing used, the knowledge and experience of the expert in the matters to which he testifies, personal bias (such as the fact he or she is paid to testify), and so forth. Matters going to schooling and licens-

ing are in a different category, we believe, because of their attenuated relevance to the medical opinion in issue. Also, there is a practical consideration of where to draw the line. Should juries be allowed to consider the school rank of a witness, or the fact that he or she failed a course? Few would argue that the answer to that question should be no. Similarly, as long as an expert witness has obtained a license to practice medicine in one State, his or her failure to obtain a license in another has limited significance, at best.

Few decisions address this issue.[2] In fact, we are aware of no Illinois opinions that address this particular point, although one has held that a physician or surgeon who is not a licensed podiatrist may not render an opinion as to the standard of care a podiatrist owes to his patient. (*Dolan v. Galluzzo* (1979), 77 Ill. 2d 279, 396 N.E.2d 13.) In *Dolan*, the court reasoned that the legislature had recognized podiatry as a " 'separate and distinct profession of healers who are severely limited in their practice and whose educational requirements are substantially different' " from those of others. (77 Ill. 2d at 281, 396 N.E.2d at 15, quoting *Dolan v. Galluzzo* (1978), 62 Ill. App. 3d 832, 836.) The court also noted, "Once the fact of such license has been established, it lies within the sound discretion of the trial court to determine if the witness is qualified as an expert regarding the standard of care." (77 Ill. 2d at 285, 396 N.E.2d at 16.) Hence, we infer that a witness' license or lack of one may indeed be relevant or even dispositive on the basic qualifying question of whether the witness may give an opinion on the standard of care in a particular case.

On the other hand, one court has stated that a license has no *direct* relationship to the qualifications of an expert. (*Hagen v. Swenson* (1975), 306 Minn. 527, 236 N.W.2d 161.) There the witness was a neurologist/psychiatrist who was called to interpret certain psychological tests. He was not a licensed psychologist, and State law made the practice of psychology without such license a misdemeanor. The court noted the witness' extensive experience in interpreting the

[2]Courts have held that it is proper to restrict the cross-examination of an expert on the fact of prior personal involvement in malpractice litigation on the ground that the relevancy of such a collateral matter is outweighed by the prejudicial effect of such questioning. See *Webb v. Angell* (1987), 155 Ill. App. 3d 848, 860, 508 N.E.2d 508, 518; see also *Poole v. University of Chicago* (1989), 186 Ill. App. 3d 554, 542 N.E.2d 746 (Plaintiff was prejudiced by improper cross-examination of her expert witness, who was asked if he had been subject to medical disciplinary proceedings and whose denial was then impeached by what purported to be a copy of a disciplinary complaint).

tests and without extensive discussion held that he was qualified to testify as an expert.

On the precise issue of whether the jury may be told of a witness' past failure to pass a licensing exam, we have found almost no authority. In *Ward v. Epting* (S.C. App. 1986), 351 S.E.2d 867, the South Carolina court noted that it was proper for the cross-examiner to elicit the fact that the witness, a practicing anesthesiologist, had failed to achieve board certification in her speciality area. The court noted that lack of certification was a material issue because it bore on *whether she was qualified to meet the standards of the speciality.*

In our opinion, *Ward v. Epting* is distinguishable because if an expert gives an opinion relating to a specialty in which she has not obtained certification, her credibility as a specialist is in issue. Here, the witness is licensed in Florida and we see little value in allowing her impeachment to be based upon a history of failure to pass the licensing exam in Illinois. An analogous situation, in a legal malpractice action, would be allowing the jury to consider the prior failures of a licensed Illinois attorney to pass the Illinois examination in determining his credibility as an expert in a given area in which he had practiced for decades. In such a case, as in the one at bar, the jury might well decide that the witness is not credible based on the past examination failures alone.

We do not pronounce an all-encompassing rule on if or when an expert's opinion may ever be impeached by the failure to pass a licensing examination. In general, we believe, the existence of a license goes only to the initial qualifying inquiry. If the witness holds a license in one State, her failure to pass the equivalent licensing examination in another State should not preclude her from testifying, absent other considerations that may be pertinent. Here, the expert's qualifications were based on long experience in particular specialties.

Defendants ably cross-examined the witness. For example, they showed the jury that, although she did read and interpret X rays, she would defer to trained radiologists. This is the type of impeaching examination that aids the jury in deciding the strength of the opinion, not whether the expert failed the Illinois licensing exam four times in the 1950s or 1960s. Accordingly, we find that, on the facts before us, defendants should not have been allowed to inform the jury of her history of failing the Illinois exam. What scant probative value this information had was outweighed by its prejudicial impact. Therefore, we find its admission to be improper and reverse the judgment entered upon the jury's verdict. On remand, if the parties proceed to a new trial, defendants shall not publish the witness' fail-

ure to pass the Illinois examination to the jury.

### III

■ Plaintiff also contends that the court erred in striking that portion of her issue instruction which concerned defendants' failure to properly interpret the decedent's X rays. Defendants had objected to that portion on the grounds that there was no evidence that they had breached any standard of care. We decline to rule on the correctness of the modified instruction that was given because on retrial there may be different or additional evidence produced and we prefer to let the parties and the trial court fashion the issue instructions based on the evidence before it. In general, plaintiff should be allowed to present her theory of the case in the instruction, and as long as some evidence supports it, it should be given. (*E.g., Foerster v. Illinois Bell Telephone Co.* (1974), 20 Ill. App. 3d 656, 664, 315 N.E.2d 63.

### IV

■ During oral argument, plaintiff resurrected an issue from her post-trial motion that she did not include in her brief on appeal. In the post-trial motion, plaintiff challenged the segregation of the jury into smoking and nonsmoking rooms, or enclosed sections within the larger courtroom. The record shows that plaintiff's attorney objected to the segregation of the jury during deliberations, although her particular objection appears to be that she was not informed of the arrangement.[3] We need not discuss this alleged impropriety, however, because we believe plaintiff waived the point by failing to include it in her brief on appeal. *Batteast v. Argonaut Insurance Co.* (1983), 118 Ill. App. 3d 4, 454 N.E.2d 706.

### V

Because of our disposition of the case, we will not discuss the

---

[3]The record is ambiguous in this regard, because the comments of the court and plaintiff's counsel fail to specify the exact nature of the arrangement for the smokers. The post-trial motion and the transcript from the hearing on that motion reveal that the court made some accommodation for the smokers; however, whether the plaintiff's attorney understood or agreed to the actual arrangement is not clear. Defendants, in their petition for rehearing, contend that the jurors were allowed to separate only during breaks from trial, as distinct from deliberations. In contrast, during oral argument, plaintiff's counsel implied that the jurors' segregation was so complete that it was as if they became two separate bodies. This innuendo, unsupported by any facts of record, deserves no further consideration.

sufficiency of the evidence. We reverse on the basis of trial error alone, because we cannot determine how much the jury was influenced by the error discussed in this opinion.

For the foregoing reasons, we reverse the judgment entered in favor of defendants and remand for a new trial.

Reversed and remanded.

JOHNSON and McMORROW, JJ., concur.