RUTH McCRAY, Indiv. and as Special Adm'r of the Estate of Avery McCray, Deceased, Plaintiff-Appellant, v. SALAH UDDIN SHAMS *et al.*, Defendants-Appellees.

Second District   No. 2—91—0423

Opinion filed February 10, 1992.

1000

Patrick A. Salvi, Michael P. Schostok, and Megan E. Chadwick, all of Law Offices of Patrick A. Salvi, of Waukegan, for appellant.

Donald L. Sime, of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan, for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Ruth McCray, both individually and as the special administrator of the estate of Avery McCray (Avery), deceased, filed a medical malpractice case against the defendant, Dr. Salah Uddin Shams, M.D., S.C. Following trial, the jury found for the defendant, who subsequently died. The executor of Dr. Shams' estate was substituted as a party defendant. Plaintiff appeals from the jury's verdict, raising the following issues: (1) whether the trial court erred in granting defendant's motion *in limine*; (2) whether the trial court erred in limiting plaintiff's cross-examination of one of defendant's expert witnesses; and (3) whether the trial court erred in denying plaintiff's motion for a new trial based upon defendant's improper closing argument.

The facts of this case are for the most part undisputed. Dr. Shams, an internist, had been Avery McCray's doctor since 1977. On February 17, 1988, the 49-year-old Avery was admitted to Victory Memorial Hospital. Dr. Shams examined him and took a history which included fever, diarrhea, stomach pains and an inability to hold even

light food down for a period of five days. Avery also complained of numbness in his fingers and being chilly. Avery's temperature was taken rectally and was 102.9. A CBC (complete blood count) was done at the time of his admission to the hospital which showed a shift to the left in his white blood count. Subsequent tests on February 18 and 19 also showed a shift to the left in his white blood count. Dr. Shams also ordered a stool sample which was negative for staph, salmonella and campylobacter.

Dr. Shams initially diagnosed Avery as suffering from enteriocolitis (an inflammation of the intestine including the large bowel) and possible flu syndrome (virus in the gastrointestinal tract). He did not order a blood culture or consult with a specialist because he did not believe Avery was suffering from a bacterial infection, such as septicemia.

Between February 17 and 19, Avery continued to suffer from nausea, although it was controlled, first by medication and then by a tube into his stomach. He did not complain further of chills, and his vital signs were stable. His temperature continued to go down, and on February 20, 1988, it was 99.4, taken orally. He was given a shot of Demerol for pain. On the 20th, he ate lunch consisting of liquids, which he tolerated well. At 2:45 p.m., Avery was sitting up unassisted, appeared alert and had no complaints. At approximately 3:30 p.m., a nurse discovered Avery was not breathing and had no pulse. Attempts to resuscitate him failed, and he was pronounced dead.

Dr. U. Khin, a pathologist at Victory Memorial Hospital, performed an autopsy on Avery. Initially, he was unable to determine the cause of death. However, after working up a number of tissue slides, he concluded that Avery died from myocarditis, which occurs when the heart muscle is attacked by inflammatory cells. A second autopsy was performed by Dr. Eupil Choi, a pathologist employed by the Cook County medical examiner's office. Dr. Choi determined the cause of death to be sepsis due to enteriocolitis.

At trial, plaintiff presented expert testimony by Dr. Stanley Rabinowitz, board certified in internal medicine with a subspecialty in infectious diseases, and by Dr. Choi to support her theory that Dr. Shams failed to conform to the standards of medical care in his treatment of Avery in that he failed to order a blood culture which would have revealed the presence of a bacterial infection, *i.e.*, sepsis, and failed to consult with a specialist in infectious diseases. As a result of Dr. Shams' failure to so act, Avery died of sepsis, which if treated properly would not have caused his death. Defendant presented medical experts: Dr. Jeffrey Semel, board certified in internal medicine

and infectious diseases, Dr. Khin and Dr. Michael Kaufman, board certified in anatomic pathology and cytopathology. Defendant's experts agreed that Avery did not suffer from or die of sepsis or septic shock. Dr. Khin and Dr. Kaufman were of the opinion that myocarditis led to Avery's death. Dr. Semel was of the opinion that no definite cause of death could be determined but that myocarditis was a possibility.

The jury returned a verdict in favor of the defendant. Plaintiff's post-trial motion was denied, and this appeal followed.

Plaintiff contends, first, that the trial court erred in granting defendant's motion *in limine*. Specifically, plaintiff argues that the jury should have been informed of Dr. Shams' failure to pass the board-certification examination in internal medicine.

■■ Initially, we must disagree with the defendant's position that Dr. Shams' failure to pass the board-certification examination is a collateral issue. When a physician sued for malpractice testifies as an expert, evidence as to his age, practice and like matters going to his qualifications as an expert is admissible. *Ward v. Epting* (1986), 290 S.C. 547, 556, 351 S.E.2d 867, 872; 61 Am. Jur. 2d *Physicians, Surgeons, & Other Healers* §346 (1981).

In *Ward v. Epting*, Dr. Epting, an anesthesiologist, was sued for medical malpractice. At trial, the plaintiff was allowed to elicit from Dr. Epting that she had failed the board-certification examinations for anesthesiology. On appeal from a jury verdict for plaintiff, Dr. Epting contended that the trial court erred in denying her motion *in limine* which would have prevented the jury from hearing of her failed attempts to pass the board-certification examination. In affirming the trial court's decision on this issue, the reviewing court stated:

> "Although Dr. Epting stated she would not testify as an expert, her qualifications as an anesthesiologist were brought out on direct examination. Her counsel asked if she had a separate license for anesthesia. She testified as to routine surgical and recovery room procedures in addition to her own actions in the circumstances of this case. She gave her opinion to a reasonable degree of medical certainty as to how air got into Mrs. Ward's stomach, and when the tube moved into the esophagus. On cross-examination she gave her opinion that Mrs. Ward had a bronchospasm in the lower part of the lungs.
>
> We hold the record shows Dr. Epting testified as an expert on medical issues. The fact she was not board certified relates to her credibility as a witness since she gave medical opinions." 290 S.C. at 556, 351 S.E.2d at 872-73.

Defendant does not dispute plaintiff's position that Dr. Shams testified as a medical expert in this cause. Indeed, the record supports that characterization of his testimony. Dr. Shams testified that he regarded himself as a specialist in the field of internal medicine. He testified as to the examination, diagnosis and subsequent treatment of Avery McCray. He testified as to the reasons he treated Avery for a viral infection rather than a bacterial one and explained why he did not order blood cultures or consult with a specialist. There can be no serious disagreement that Dr. Shams testified as an expert witness. *Ward*, 290 S.C. at 556, 351 S.E.2d at 872.

We find the case of *O'Brien v. Meyer* (1989), 196 Ill. App. 3d 457, to be distinguishable. In that case, plaintiff's medical expert, a Florida physician who had been determined qualified to testify by the trial court, was compelled to reveal that she had failed the Illinois medical licensing examination. In determining that the trial court committed reversible error in failing to bar reference of the doctor's failure to pass the Illinois test, the reviewing court stated:

"We believe that once the qualifying threshold has been met, attempts to impeach the expert's opinion should have a clear link to facts and assumptions underlying the opinion, the methodology or testing used, the knowledge and experience of the expert in the matters to which he testifies, personal bias (such as the fact he or she is paid to testify), and so forth. Matters going to schooling and licensing are in a different category, we believe, because of their attenuated relevance to the medical opinion in issue. *** Similarly, as long as an expert witness has obtained a license to practice medicine in one State, his or her failure to obtain a license in another has limited significance, at best.

\* \* \*

We do not pronounce an all-encompassing rule on if or when an expert's opinion may ever be impeached by the failure to pass a licensing examination. In general, we believe, the existence of a license goes only to the initial qualifying inquiry. If the witness holds a license in one State, her failure to pass the equivalent licensing examination in another State should not preclude her from testifying, absent other considerations that may be pertinent. Here, the expert's qualifications were based on long experience in particular specialties." 196 Ill. App. 3d at 462-64.

We find it significant that the court in *O'Brien* distinguished *Ward v. Epting* on the basis that since Dr. Epting was giving an ex-

pert opinion relating to a speciality in which she had not obtained certification, her credibility as a specialist was in issue. Moreover, her lack of certification was a material issue because it bore on whether she was qualified to meet the standards of the speciality. *O'Brien*, 196 Ill. App. 3d at 464.

■■ Although we agree with the analysis of this issue found in *Ward v. Epting*, we conclude that the failure to inform the jury that Dr. Shams did not pass the board-certification examination for internal medicine was not reversible error under the facts of this case. During plaintiff's direct examination of her expert witness, Dr. Rabinowitz, the following colloquy took place:

> "Q. Dr. Shams is not board certified. Would the standard of care in your opinion be the same for a non-board certified internal medicine specialist?
>
> A. Yes."

Thus, the jury was, in fact, informed that Dr. Shams was not board certified. Since, according to plaintiff's expert, the standard of care was the same for a board-certified physician as for a nonboard-certified physician, the lack of certification in this cause was not a material issue, unlike the situation in *Ward v. Epting*. Further, we believe that, since the material issue is whether Dr. Shams was board certified, the actual reason for why he was not so certified is of limited significance.

Therefore, we conclude that the trial court did not err in granting defendant's motion *in limine.*

■■ Next, plaintiff contends that the trial court erred when it denied plaintiff an opportunity to cross-examine Dr. Semel, defendant's medical expert, regarding the contents of Dr. Shams' deposition which he had reviewed prior to trial.

During plaintiff's cross-examination of Dr. Semel, the following colloquy occurred:

> "Q. *** if the clinical picture indicates gastroenteritis with septicemia, you have a negative stool culture, you have to order a blood culture?
>
> A. I would agree with that.
>
> Q. Did you read Dr. Shams' deposition?
>
> A. Yes, I did.
>
> Q. Did you read in there where he said in his opinion you don't have to order a blood culture under those circumstances?
>
> MR. SIME: Objection, Your Honor."

Outside the presence of the jury, defense counsel argued that the question was improper cross-examination because Dr. Shams' in-court

testimony, not his deposition testimony, was before the jury and that whether Dr. Semel agreed with Dr. Shams was irrelevant. Plaintiff's counsel argued that, under *Wilson v. Clark* (1981), 84 Ill. 2d 186, he had an obligation to cross-examine Dr. Semel on all of the materials he relied on and which formed the basis of his opinion, which in this case included Dr. Shams' deposition. The trial court sustained the defense objection on the basis that Dr. Semel could not be impeached on someone else's statement.

We agree with plaintiff that ordinarily Dr. Semel could properly have been cross-examined on Dr. Shams' deposition. It is not error to permit an expert to testify regarding reports or medical tests performed by other doctors and which he examined in reaching his own opinion. (*Piano v. Davison* (1987), 157 Ill. App. 3d 649, 672 (the expert testified that he read the depositions of other witnesses and had read another doctor's report).) Whether Dr. Semel relied on Dr. Shams' deposition testimony in reaching his own opinion is not determinative since an expert who bases his opinion on a report does not have to agree with the entire report. *Piano*, 157 Ill. App. 3d at 671-72.

Nevertheless, we do not believe that in this instance the trial court abused its discretion in sustaining the defense objection. The question posed contained a reference to septicemia, which, according to both Dr. Shams and Dr. Semel, was not present in Avery McCray. Regardless of whether Dr. Shams and Dr. Semel disagreed on whether to order a blood culture when septicemia was present, the question posed in this case was whether Dr. Shams met the appropriate standard of care. Dr. Semel's opinion that Dr. Shams did was based on the fact that he agreed that sepsis or septicemia was not indicated in Avery McCray. Thus, their disagreement as to treatment of a condition neither believed was present in this case is irrelevant.

We conclude therefore that the trial court did not err in sustaining defendant's objection to plaintiff's cross-examination of Dr. Semel.

■ Finally, plaintiff contends that certain portions of defendant's closing argument denied her a fair trial.

During closing argument, defense counsel stated:

"You can say all you want about doing blood cultures and wouldn't it have been nice to have it, but there is no evidence in this record to substantiate what the result would have been. You cannot take the absence—

MR. SALVI (plaintiff's counsel): I object. In the record and in the record of the court there certainly is. There is the testimony of the physician.

THE COURT: I will sustain the objection.

MR. SIME (defense counsel): You cannot take the absence of a blood test as proof that had the blood test been done it would have been positive."

Later in his argument, defense counsel stated:

"Dr. Rabinowitz (plaintiff's medical expert) had to admit that there were never any signs of septic shock in this record, not a one."

Plaintiff's attorney objected, and the trial court, without ruling on the objection, instructed the jury to rely on their overall recollective memories. Immediately thereafter, defense counsel stated:

"He [Dr. Rabinowitz] said that he must have gone into septic shock at least hours before his death.

MR. SALVI: That is not the testimony

MR. SIME: It is the testimony.

MR. SALVI: I object and ask that it be stricken.

THE COURT: I will overrule the objection. Again, the jury can use their own collective recollections of what the witnesses testified. You heard the facts."

Finally, at one point the defense attorney misstated the burden of proof. Plaintiff objected, and the trial court correctly stated the burden of proof.

We observe that plaintiff's objection to the first remark complained of, *i.e.*, the reference to the blood culture, was promptly sustained by the trial court. Any possible prejudice to the plaintiff was therefore cured. *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 135.

Regarding the second and third comments, plaintiff charges that defense counsel mischaracterized Dr. Rabinowitz's testimony. From our reading of the testimony, defense counsel's argument appears to be no more than drawing reasonable inferences from the record, which is permissible. (*Sloan v. O'Dell* (1987), 159 Ill. App. 3d 268, 273.) Even assuming *arguendo* that defense counsel did mischaracterize Dr. Rabinowitz's testimony, any error would have been cured by the trial court's instruction that the jury should rely on its own memory of the evidence. *Cahill v. Boury* (1986), 144 Ill. App. 3d 413, 419.

Finally, it is apparent from the record that defense counsel's misstatement of the burden of proof was inadvertent. The mistake was quickly corrected by the trial court, and defense counsel restated the correct burden of proof. We fail to see how this deprived plaintiff of a fair trial.

We conclude that none of the complained-of remarks either singularly or cumulatively deprived the plaintiff of a fair trial.

The judgment of the circuit court is affirmed.

Affirmed.

GEIGER and BOWMAN, JJ., concur.