KAREN GOSSARD, Plaintiff-Appellant, v. JYOTI KALRA, Defendant-Appellee (Covenant Medical Center of Champaign/Urbana, Defendant).

Fourth District   No. 4—96—0591

Opinion filed July 14, 1997.

Michael J. Tague, of Flynn, Palmer & Tague, of Champaign, for appellant.

Laura D. Clower and Edward R. Peterka, both of Dobbins, Fraker, Tennant, Joy & Perlstein, P.C., of Champaign, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff Karen Gossard filed a complaint in the circuit court of Champaign County alleging medical malpractice against defendants Jyoti Kalra, M.D., and Covenant Medical Center (CMC). The trial court entered a directed verdict in favor of CMC, and the jury returned a verdict for Dr. Kalra. Gossard appeals, contending the trial court erred by (1) excluding evidence of Dr. Kalra's prior failed attempts to pass board-certification examinations in radiation oncology and (2) refusing Gossard's request to send certain medical records to the jury room. CMC is not a party in this appeal. We affirm.

In 1992, Gossard was diagnosed with breast cancer. As part of her treatment, Gossard was referred to Dr. Kalra for radiation therapy. Gossard contends during treatment Dr. Kalra negligently created radiation fields that were "inappropriate and excessively large," which resulted in burns, disfigurement, lymphedema, infections, and mental suffering.

Dr. Kalra filed several motions *in limine*. One requested the trial court prohibit Gossard from presenting evidence concerning Dr. Kalra's failures to pass the board-certification examination. A deposition from another case revealed Dr. Kalra received board certification in radiation oncology in 1986 after three failed attempts to pass the oral portion of the examination. Dr. Kalra passed the written portion of the examination on his first attempt in 1982. After hearing argument, the trial court granted Dr. Kalra's motion.

Prior to closing arguments, the trial court refused to send certain medical records to the jury room. Gossard presented redacted versions (exhibit Nos. 8A and 14A) of two medical records (exhibit Nos. 8 and 14), which she argued would eliminate concerns surrounding the larger records. Dr. Kalra argued the redacted versions unduly emphasized the aspects Gossard believed to be most favorable to her case. The trial court determined which exhibits would go to the jury room and excluded exhibit Nos. 8 and 14. After Gossard's counsel sought clarification whether the court's ruling excluded the redacted versions, the court responded those were not in evidence. The trial court then explicitly reminded Gossard she may argue anything in evidence, even that not sent to the jury room.

Gossard first argues the trial court erred by barring reference to Dr. Kalra's earlier failures to acquire board certification. Gossard maintains these failures are directly relevant to Dr. Kalra's credibility in his expert testimony. Gossard argues *O'Brien v. Meyer*, 196 Ill. App. 3d 457, 554 N.E.2d 257 (1989), a case the trial court purportedly relied upon in granting the motion *in limine*, is flawed. Gossard contends two later cases declined to apply *O'Brien* in similar circum-

stances: *Creighton v. Thompson*, 266 Ill. App. 3d 61, 69-70, 639 N.E.2d 234, 239 (1994), and *Kurrack v. American District Telegraph Co.*, 252 Ill. App. 3d 885, 889-901, 625 N.E.2d 675, 685-86 (1993).

Dr. Kalra contends the evidence was irrelevant and immaterial and, in the alternative, even if relevant, the probative value of the evidence was outweighed by its prejudicial effect. Dr. Kalra argues *O'Brien* is applicable and Gossard's assertion *Creighton* and *Kurrack* failed to apply *O'Brien* in analogous situations is incorrect. Dr. Kalra further argues even if the trial court committed error, the error was harmless.

A trial court's ruling on a motion *in limine*, whether to admit evidence, will not be disturbed on review absent a clear abuse of discretion. *Swick v. Liautaud*, 169 Ill. 2d 504, 521, 662 N.E.2d 1238, 1246 (1996). When a physician defending a medical malpractice suit testifies as an expert, evidence as to his qualifications as an expert, such as the physician's age and practice, is admissible. *McCray v. Shams*, 224 Ill. App. 3d 999, 1002, 587 N.E.2d 66, 68 (1992), citing *Ward v. Epting*, 290 S.C. 547, 556, 351 S.E.2d 867, 872 (1986). In general, any type of impeaching matter may be produced during cross-examination, because a purpose of cross-examination is to test the witness' credibility. *Rush v. Hamdy*, 255 Ill. App. 3d 352, 362, 627 N.E.2d 1119, 1126 (1993). Relevant evidence may be excluded, however, when factors of prejudice or confusion outweigh its probative value. *Gill v. Foster*, 157 Ill. 2d 304, 313, 626 N.E.2d 190, 194 (1993).

In *O'Brien*, the plaintiff's expert failed the Illinois licensing examination four times, but she later became licensed in Florida. The first district held evidence of the expert's past failed attempts to become licensed in Illinois was inadmissible as to her credibility. The *O'Brien* court reasoned:

> "[O]nce the qualifying threshold has been met, attempts to impeach the expert's opinion should have a clear link to facts and assumptions underlying the opinion, the methodology or testing used, the knowledge and experience of the expert in the matters to which he testifies, personal bias (such as the fact he or she is paid to testify), and so forth. Matters going to schooling and licensing are in a different category, we believe, because of their attenuated relevance to the medical opinion in issue. Also, there is a practical consideration of where to draw the line. Should juries be allowed to consider the school rank of a witness, or the fact that he or she failed a course? Few would argue that the answer to that question should be no." *O'Brien*, 196 Ill. App. 3d at 462-63, 554 N.E.2d at 261.

The *O'Brien* court examined *Ward* (290 S.C. 547, 351 S.E.2d 867), in which a South Carolina court found it proper to cross-examine an expert witness regarding her failure to achieve board certification in her specialty, because the court found it was relevant to whether the expert was qualified to meet her specialty's standards. The *O'Brien* court distinguished *Ward*, stating "if an expert gives an opinion relating to a specialty in which she has not obtained certification, her credibility as a specialist is in issue." *O'Brien*, 196 Ill. App. 3d at 464, 554 N.E.2d at 261. The *O'Brien* court believed permitting impeachment based on prior failures to pass the Illinois examination had little value considering the witness was licensed in Florida. The court concluded, "[w]hat scant probative value this information had was outweighed by its prejudicial impact." *O'Brien*, 196 Ill. App. 3d at 464, 554 N.E.2d at 262.

We agree *Creighton* and *Kurrack* are distinguishable. In *Kurrack*, the first district found the expert witness' failure to pass the board-certification examination in internal medicine was relevant to his credibility on the subjects to which he was testifying. *Kurrack*, 252 Ill. App. 3d at 900-01, 625 N.E.2d at 685-86. The witness in *Kurrack* had not only failed the board-certification examination, but also had never attained board certification. *Kurrack*, 252 Ill. App. 3d at 900, 625 N.E.2d at 685. In *Creighton*, the first district affirmed the trial court's decision to allow cross-examination of the plaintiff's expert about restrictions on his medical license. The *Creighton* court concluded, however, *O'Brien* was inapplicable because the *Creighton* facts concerned *current* restrictions on an expert's license to practice. *Creighton*, 266 Ill. App. 3d at 69-70, 639 N.E.2d at 239.

We note the first district has stated an expert's failure to pass a board-certification examination is both relevant and admissible. *Rockwood v. Singh*, 258 Ill. App. 3d 555, 557, 630 N.E.2d 873, 875 (1993). There is, however, no indication the witness at issue in *Rockwood*, like those in *Ward* and *Kurrack*, ever attained board certification. *Rockwood*, 258 Ill. App. 3d at 557-58, 630 N.E.2d at 875 (determining because the defendant did not testify as an expert, evidence of his failure to pass a board-certification examination was properly barred). In this case Dr. Kalra was board certified at the time he treated Gossard and at trial.

■ We find the trial court did not abuse its discretion in barring evidence of Dr. Kalra's prior failures. The facts of this case are more analogous to *O'Brien* than to the cases cited by Gossard. The trial court may have found the rationale in *O'Brien* to be instructive and determined evidence of Dr. Kalra's failures had little probative value and any it had was outweighed by its prejudicial impact. Dr. Kalra

became board certified over $6^1/_2$ years prior to his treatment of Gossard, and he remained board certified throughout Gossard's treatment.

■ Second, Gossard argues her "medical records *** were properly admitted into evidence and should have been submitted to the jury as properly admissible business records." Gossard contends two truncated versions, exhibit Nos. 8A and 14A, were admitted into evidence, arguing because they were admitted as a whole, they were admitted in part.

Gossard's argument indicates she has confused the issue of admissibility with the issue of whether exhibits will be sent to the jury room. Simply because something is admitted does not mean it is going to the jury room. Section 2—1107(d) of the Civil Practice Law states: "Papers read or received in evidence *** *may* be taken by the jury to the jury room for use during the jury's deliberation." (Emphasis added.) 735 ILCS 5/2—1107(d) (West 1994). The trial court thus has been given considerable discretion in this determination. *Merlo v. Parisi*, 255 Ill. App. 3d 53, 61, 627 N.E.2d 309, 315 (1993); *Fultz v. Peart*, 144 Ill. App. 3d 364, 379, 494 N.E.2d 212, 223 (1986); *Wetherell v. Matson*, 52 Ill. App. 3d 314, 318, 367 N.E.2d 472, 475 (1977).

We find no abuse of discretion by the trial court. The exhibits Gossard argues should have been sent to the jury room were voluminous; three contained over 100 pages. The exhibits contained irrelevant information pertaining to treatment for unrelated medical problems, including carpal tunnel surgery and a hysterectomy. The records also contained information referring to Gossard's domestic circumstances and the alleged episode of overradiation, both barred by granted motions *in limine*. In addition, Gossard does not argue the trial court prohibited testimony on these exhibits, and the trial court expressly reminded Gossard she could argue evidence within the exhibits during closing arguments.

Gossard further argues the truncated versions were admitted. Even if that were true, simply because they were admitted does not require they be sent to the jury room. Exhibit No. 8A referenced information regarding Gossard's domestic circumstances, information barred by the trial court. Moreover, because truncated versions often highlight evidence one side finds favorable, the trial court's determination in regards to the truncated versions was not an abuse of discretion.

Affirmed.

GARMAN and COOK, JJ., concur.