Diana JACKSON *v.* Dr. J.K. BUCHMAN
and J.K. Buchman, M.D., P.A.

98-1445                                    996 S.W.2d 30

Supreme Court of Arkansas
Opinion delivered July 22, 1999

*McMath, Vehik, Drummond, Harrison & Ledbetter, P.A.,* by: *Phillip H. McMath,* for appellant.

*Friday, Eldredge & Clark,* by: *William M. Griffin III* and *Clifford W. Plunkett,* for appellees.

W H. "DUB" ARNOLD, Chief Justice. This is a medical-malpractice action. Appellant Diana Jackson filed a complaint in the Grant County Circuit Court alleging that Appellee Dr. Joseph K. Buchman negligently injured her during surgery to remove her gallbladder. The jury found in favor of Dr. Buchman, and Jackson now appeals. For reversal, Jackson argues that the trial court erred in refusing to allow her to present evidence that Dr. Buchman failed to pass an examination to become a board-certified surgeon, and that he misrepresented his credentials to gain listing as a board-certified surgeon in a physicians' directory. Because this case presents issues of first impression, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1). We affirm.

The record reflects that on or about November 2, 1994, Diana Jackson was hospitalized at St. Vincent's Infirmary in Little Rock for surgery to remove her gallbladder. Dr. Buchman performed the surgery, which is called a laparoscopic cholecystectomy. During the course of the surgery, Dr. Buchman severed Jackson's bile ducts. As a result, Jackson had to have numerous corrective surgeries; the first surgery was performed by Dr. Buchman on November 10, 1994. Subsequently, Jackson had surgery

at Baylor University in Texas and at Johns Hopkins University in Maryland. At trial, the evidence showed that one of the known risks associated with this type of surgery is that the patient's bile ducts could be damaged or cut during the procedure. Additionally, there was evidence that Jackson had an abnormal anatomy in the area of her gallbladder.

Prior to the trial, Dr. Buchman filed a motion in limine to prohibit Jackson from eliciting testimony that he has not become board certified by the American College of Surgeons, a voluntary organization. Dr. Buchman passed the written examination on his second or third try, but failed the oral part of the test three times and was thus no longer eligible to take the test without further training. Dr. Buchman argued that such a certification was not required to practice surgery in the Little Rock hospitals in which he practiced, and that such evidence would be prejudicial because Jackson would likely use that information to insinuate that he failed to meet the standard of care in this instance. Jackson contended that the evidence was relevant to show that Dr. Buchman lacked the level of skill and learning possessed by the members of his profession, pursuant to AMI 1501,[1] and that it went to the issue of his reputation as a surgeon. The trial court granted the motion, finding that the evidence would only convolute the issues before the jury, and ordered Jackson not to refer to, mention, cross-examine, or discuss in any way the fact that Dr. Buchman is not board certified or that he has failed the oral portion of his examination.

During the course of the trial, after Dr. Buchman had testified, Jackson's attorneys moved to admit evidence of his failure to obtain board certification on the ground that the defense had opened the door with their questions about his qualifications and reputation as a competent surgeon in the community. Jackson's attorneys also asserted that the evidence was admissible to impeach Dr. Buchman's credibility as an expert. Initially, the trial court

---

[1] AMI 1501 provides in pertinent part that a surgeon "must possess and apply with reasonable care the degree of skill and learning ordinarily possessed and used by members of his profession in good standing, engaged in the same specialty in the locality in which he practices, or in a similar locality."

indicated that it would allow Jackson's attorneys to ask Dr. Buchman if he is board certified, but that they could not inquire as to how many times he had taken the examination and what part of the test he failed. After hearing further argument, however, the trial court went back to its original position, ruling that the evidence was not admissible. The trial court also rejected Jackson's argument that Dr. Buchman had misrepresented that he was board certified in a physicians' directory. The jury returned a unanimous verdict in favor of Dr. Buchman, and this appeal followed.

## I.   Evidence of Failure to Attain Board Certification

For her first point for reversal, Jackson argues that the trial court erred in refusing to allow her to present evidence that Dr. Buchman was not a board-certified surgeon. Specifically, Jackson wished to present evidence that Dr. Buchman was not board certified, that he had failed to pass the certification examination after repeated attempts, and that, as a result of those past failures, he was no longer eligible to take the examination. Jackson argues that this evidence was relevant for three reasons: (1) to show Dr. Buchman's lack of competence as a surgeon; (2) to rebut testimony that Dr. Buchman was a reputable surgeon in Little Rock; and (3) to impeach Dr. Buchman's credibility as his own expert witness.

■ ■   Although we have never addressed the admissibility, in a malpractice case, of a physician's failure to become board certified in his or her chosen field of practice, we have consistently held that trial courts are accorded wide discretion in evidentiary rulings, and we will not reverse such rulings absent a manifest abuse of discretion. *Arthur v. Zearley*, 337 Ark. 125, 992 S.W.2d 67 (1999); *Lovell v. Beavers*, 336 Ark. 551, 987 S.W.2d 660 (1999). Nor will we reverse a trial court's ruling on evidentiary matters absent a showing of prejudice. *Grummer v. Cummings*, 336 Ark. 447, 986 S.W.2d 91 (1999); *Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998). Moreover, the balancing of probative value against prejudice, pursuant to A.R.E. Rule 403, is a matter left to the sound discretion of the trial judge, and that ruling will not be reversed absent a manifest abuse of discretion. *Grummer*, 336 Ark. 447, 986 S.W.2d 91. Similarly, a trial court has wide latitude to

impose reasonable limits on cross-examination based upon concerns about confusion of the issues or interrogation that is only marginally relevant. *Larimore v. State*, 317 Ark. 111, 877 S.W.2d 570 (1994). It is within this standard of review that we address Jackson's assertion that the trial court erred by refusing to admit evidence of Dr. Buchman's failure to obtain board certification.

■ Because this is an issue of first impression in this state, we turn to other jurisdictions for guidance. The vast majority of appellate courts that have considered this issue have analyzed it under an abuse-of-discretion standard. *See Campbell v. Vinjamuri*, 19 F.3d 1274 (8th Cir. 1994); *Gipson v. Younes*, 724 So.2d 530 (Ala. Civ. App. 1998); *Williams v. Memorial Medical Ctr.*, 460 S.E.2d 558 (Ga. Ct. App. 1995); *Gossard v. Kalra*, 684 N.E.2d 410 (Ill. App. 4 Dist. 1997); *Beis v. Dias*, 859 S.W.2d 835 (Mo. Ct. App. S.D. 1993); *Ward v. Epting*, 351 S.E.2d 867 (S.C. Ct. App. 1986); *Sommers v. Friedman*, 493 N.W.2d 393 (Wis. Ct. App. 1992). Generally, evidence of a physician's lack of board certification is admissible. *See, e.g., Campbell*, 19 F.3d 1274; *Gipson*, 724 So.2d 530; *Williams*, 460 S.E.2d 558; *McCray v. Shams*, 587 N.E.2d 66 (Ill. App. 2 Dist. 1992); *Beis*, 859 S.W.2d 835; *Ward*, 351 S.E.2d 867; *Sommers*, 493 N.W.2d 393. On the other hand, evidence that the physician failed the board examination is generally not admissible, regardless of whether it is offered (1) to show that the physician was negligent or (2) to impeach the physician's expert testimony.[2] We discuss first the relevance of such evidence on the issue of negligence.

In *Campbell*, 19 F.3d 1274, Dr. Vinjamuri admitted in his deposition that he was not a board-certified anesthesiologist and that he had failed the certification examination on three or four occasions. He moved to exclude the evidence of his past examination failures, and the trial court granted the motion. The plaintiff was permitted, however, to elicit from Dr. Vinjamuri the fact that he was not board certified. The Eighth Circuit affirmed the

---

[2] The only case that we have found that allowed such evidence is *Ward*, 351 S.E.2d 867 (holding that the trial court did not abuse its discretion in permitting the plaintiff to cross-examine the defendant-physician on the fact that she had twice failed to pass the certification examination).

district court's conclusion that the evidence of Dr. Vinjamuri's failure to pass his board-certification examination was irrelevant to the issue of his professional competence and his actions on the date in question. The court explained:

> For the evidence of Vinjamuri's test failures to be relevant, his failure to pass the anesthesiology examination must make it more likely than not that, during this particular surgery, Vinjamuri would be negligent in his duties of properly positioning Campbell or in properly supervising the nurse anesthetist. *See* Fed. R. Evid. 401. We agree with Vinjamuri that the evidence was not relevant to this issue as *a person's performance on a written or oral examination is not determinative of one's ability to meet the standard of care required on a specific occasion.*
>
> Performance on a board certifying examination might speak to an individual's overall knowledge of a particular medical specialty, but would not necessarily reflect knowledge of the specific activity being scrutinized for negligence. Further, *it would be improper for the jury to use the evidence in the manner suggested by Campbell, that is for the jury to conclude that because a physician was unable to pass his board exams, he was negligent on a specific occasion. Beis v. Dias,* 859 S.W.2d 835 (Mo. App. 1993) (ability to pass a board examination only goes to a physician's test taking abilities and does not make his or her negligence on one particular day more likely than not).

*Id.* at 1276-77 (emphasis added). *See also Gipson,* 724 So.2d 530 (holding that a physician's failure of a certification test is irrelevant to the issue of his or her negligence in a malpractice case); *Williams,* 460 S.E.2d 558 (explaining that such evidence has little, if any, relevance to the issue of whether the physician complied with the standard of care required in his or her treatment of a patient).

■ ■ We thus reject Jackson's assertion that evidence of Dr. Buchman's failed attempts to pass the board examination was relevant, pursuant to AMI 1501, to show that he lacked the level of skill and learning possessed by the members of his profession and was not competent as a surgeon. We agree with the Eighth Circuit's reasoning that the ability or inability to pass examinations has no bearing on the issue of one's ability to meet the appropriate standard of care on a specific occasion. Moreover, it is undisputed that board certification is not required by law to practice surgery

in Arkansas. Accordingly, the legal standard of care set out in AMI 1501 is in no way affected by board certification. Having thus determined that the evidence of Dr. Buchman's examination failures was not admissible to show that he was negligent in performing surgery on Jackson, we now consider the argument that the evidence should have been admitted to impeach his credibility as an expert witness.

Rule 702 of the Arkansas Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Whether a witness may give expert testimony rests largely within the sound discretion of the trial court, and that determination will not be reversed absent an abuse of discretion. *New Prospect Drilling Co. v. First Commercial Trust Co.*, 332 Ark. 466, 966 S.W.2d 233 (1998) (citing *Wade v. Grace*, 321 Ark. 482, 902 S.W.2d 785 (1995)). "Once an expert witness is qualified, the weakness in the factual underpinning of the expert's opinion may be developed upon cross-examination and such weakness goes to the weight and credibility of the expert's testimony." *Suggs v. State*, 322 Ark. 40, 43, 907 S.W.2d 124, 126 (1995) (citing *Polk v. Ford Motor Co.*, 529 F.2d 259 (8th Cir.), *cert. denied*, 426 U.S. 907 (1976)).

In *O'Brien v. Meyer*, 554 N.E.2d 257 (Ill. App. 1 Dist. 1989), the Illinois Court of Appeals reversed the trial court's decision to allow the defendants to cross-examine the plaintiff's expert witness, who was a licensed physician in the state of Florida, regarding the fact that she had failed the Illinois licensing examination four times. The court explained:

> We believe that once the qualifying threshold has been met, attempts to impeach the expert's opinion should have a clear link to facts and assumptions underlying the opinion, the methodology or testing used, the knowledge and experience of the expert in the matters to which he testifies, personal bias (such as the fact he or she is paid to testify), and so forth. *Matters going to schooling and licensing are in a different category, we believe, because of their atten-*

*uated relevance to the medical opinion in issue.* Also, there is a practical consideration of where to draw the line. Should juries be allowed to consider the school rank of a witness, or the fact that he or she failed a course? Few would argue that the answer to that question should be no.

*Id.* at 261 (emphasis added). The court went on to state that if the jury were allowed to consider such evidence, "the jury might well decide that the witness is not credible based on the past examination failures alone." *Id.* at 262. *See also Gipson,* 724 So.2d 530 (holding that it was not error to exclude evidence of the defendant-physician's failed examinations where the trial court concluded that the evidence was unfairly prejudicial because the jury might use the evidence not only to assess the physician's credibility as an expert, but also to resolve the issue of his or her negligence).

Similarly, in *Campbell,* 19 F.3d 1274, the Eighth Circuit rejected the argument that evidence of past examination failures was admissible to impeach the physician's expert testimony. The court concluded:

> *His test failures have no clear connection to his knowledge and experience of the matter of which he was testifying (whether or not he met the standard of care in his treatment of Campbell). It is sufficient that the jury was given the information that Vinjamuri was not board certified in his speciality. The reason for his lack of certification is of limited significance.* To hold otherwise we would have to conclude that admission of Vinjamuri's test failures would probably have led to a verdict for the plaintiff. However, the jury could legitimately only use the information to impeach Vinjamuri's statement where he asserts he met the appropriate standard of care. Given the additional expert testimony presented by other defense witnesses on whether Vinjamuri met [the] standard of care, we cannot conclude that a jury would be significantly swayed by casting doubt on Vinjamuri's statement.

*Id.* at 1277 (citations omitted) (emphasis added).

■ ■ In light of the foregoing precedents, we conclude that the trial court did not abuse its discretion in excluding the evidence that Dr. Buchman had failed the certification examination on a number of occasions. Evidence of a physician's lack of board certification may be used to impeach the physician's credi-

bility as an expert witness; however, the trial court must still properly weigh the interests under Rule 403, which provides for the exclusion of relevant evidence if its probative value is substantially outweighed by the possibility of unfair prejudice or confusion of the issues. *See Arthur*, 337 Ark. 125, 992 S.W.2d 67; *Lovell*, 336 Ark. 551, 987 S.W.2d 660. "This weighing is left to the trial court's sound discretion and will not be reversed absent a showing of manifest abuse." *Id.* at 554, 987 S.W.2d at 662 (quoting *Bohanan v. State*, 324 Ark. 158, 166, 919 S.W.2d 198, 203 (1996)). Given the potential harm that may result from such testimony, *i.e.*, that the jury may improperly consider it as evidence of negligence, we cannot say that the trial court erred in excluding the evidence.

■ We conclude, however, that it was error for the trial court to refuse to permit Jackson to ask Dr. Buchman if he is a board-certified surgeon. The evidence of whether he was board certified was relevant to rebut his credibility as an expert witness. As Jackson correctly asserts, Dr. Buchman was not required to give expert testimony on his own behalf, and if he had not, he could not have been forced to testify against himself regarding the issue of whether he met the standard of care in this instance. *See* Ark. Code Ann. § 16-114-207(3) (1987). Notwithstanding our conclusion that it was error to exclude this evidence, we do not reverse because Jackson has failed to demonstrate that she was prejudiced by the trial court's ruling. Error may not be predicated upon an evidentiary ruling unless a substantial right is affected, and we will not reverse in the absence of prejudice. *See* A.R.E. Rule 103(a); *Larimore*, 317 Ark. 111, 877 S.W.2d 570. It is the appellant's burden to indicate to this court what prejudice was caused by the erroneous ruling. *Webb v. Thomas*, 310 Ark. 553, 837 S.W.2d 875 (1992).

■ The record reflects that several physicians, one of whom was called by Jackson, gave expert testimony that Dr. Buchman met the standard of care in his treatment of Jackson. Indeed, even Jackson's key expert witness, Dr. John K. Wright, testified that the fact that Dr. Buchman was not board certified had no bearing on his opinion. Dr. Wright indicated that the mere fact that Dr. Buchman is not board certified does not mean

that he is not qualified to perform the particular surgery involved here. Dr. Wright explained that fifteen to twenty percent of physicians fail to become board certified, for whatever reason. He stated further that the fact that Dr. Buchman is not board certified was not a basis for his opinion that he was negligent or that his actions fell below the standard of care. Given such testimony from Jackson's expert witness, Dr. Buchman's lack of board certification was not a material issue to the cause before the jury. *See McCray*, 587 N.E.2d 66 (holding that because the plaintiff's expert testified that the standard of care was the same for a board-certified physician as for a physician who was not board-certified, the lack of certification was not a material issue). Thus, no prejudice resulted from the trial court's exclusion of the evidence.

## II. Evidence of Misrepresentation of Board Certification

For her second point for reversal, Jackson argues that the trial court erred in refusing to allow her to present evidence of Dr. Buchman's listing in a Healthsource HMO Directory, which showed that he was a board-certified physician. The directory noted board-certified physicians with an asterisk by their names. In the 1994 directory, Dr. Buchman's name appeared without an asterisk, but in the 1995 directory, an asterisk was beside his name. Jackson argues that such evidence demonstrates that Dr. Buchman clearly misrepresented his credentials to the HMO and the public. We disagree.

During the proffer, Dr. Buchman stated that he did not know why he was shown as being board certified in the 1995 directory, but he suspected that it must have been a clerical error. Dr. Buchman also testified that if Healthsource had sent him a new application form for the 1995 directory, his office would have completed the form. Based on this testimony, Jackson asserts that Dr. Buchman misrepresented his credentials on the application so that he could be listed as board certified in the directory. The trial court disagreed, finding that there was no proof that Dr. Buchman had anything to do with the publication or distribution of the directory or that he had provided them with fraudulent or inappropriate information. We cannot say that the trial court manifestly abused its discretion in refusing to admit the evidence, given

the scant, if any, probative value and the obvious prejudicial effect. *See Lovell*, 336 Ark. 551, 987 S.W.2d 660; *Grummer*, 336 Ark. 447, 986 S.W.2d 91. We thus affirm the judgment of the trial court.

THORNTON, J., dissents.

RAY THORNTON, Justice, dissenting. I agree with the majority's conclusion that the trial court did not abuse its discretion in ruling that evidence that Dr. Buchman had failed the board exams on numerous occasions and was no longer eligible to take the exam was inadmissible to show negligence. I also agree that once the doctor had made his credentials an issue by listing some of them in order to become qualified as an expert, it was error to refuse to allow the question of board certification to be asked on cross-examination as to his credentials as an expert. Evidence that an expert is or is not board certified in a particular specialty bears on the expert's professional expertise, as does the person's education, training, licensing, and experience, and such evidence should be admissible. *See Kinser v. Elkadi*, 674 S.W.2d 226 (Mo.App. S.D. 1984). *See also Ward v. Epting*, 290 S.C. 547, 351 S.E.2d 867 (App. 1986)(*citing* 61 AM. JUR. 2D *Physicians, Surgeons, & Other Healers* § 346 (1981)).

However, I respectfully dissent from the majority's conclusion that this error in denying appellant the opportunity to challenge Dr. Buchman's credentials as an expert witness was not prejudicial to appellant's case, specifically because Dr. Buchman's testimony as an expert formed the foundation for the defense that appellant's injuries were caused by an abnormal anatomy in the area of her gallbladder.

Dissent.