777 So.2d 427 (2000)
Charles E. DORFMAN, M.D., Appellant,
v.
Bruce SCHWABL & Jeanette Schwabl, etc., Appellee.
No. 5D99-3195.
District Court of Appeal of Florida, Fifth District.
December 22, 2000.
Rehearing Denied February 8, 2001.
Thomas E. Dukes, III & Ruth C. Osborne of McEwan, Martinez, Luff, Dukes & Ruffier, P.A., Orlando, for Appellant.
Stephan W. Carter, Winter Park, and James R. Provencher, Orlando, for Appellee.
*428 THOMPSON, C.J.
In this medical negligence case, defendant Charles F. Dorfman, M.D., timely appeals the final judgment entered in favor of plaintiffs Christopher Schwabl and his parents, Bruce and Jeannette Schwabl. We affirm.
On 21 October 1996, Christopher, then a fourteen year old, developed abdominal pain in the early evening after school. The pain worsened and his mother brought him to Florida Hospital Altamonte between 10 and 11 p.m. The emergency room physician determined that he likely had testicular torsion in his right testicle, a condition which can lead to the loss of the testicle if not treated correctly. Dorfman, a urologist on staff, was called at home to come to the hospital and examine Christopher. By the time Dorfman observed Christopher, Christopher's pain had apparently subsided. Dorfman determined that just as Christopher had spontaneously torsed, he must have spontaneously detorsed and thus was no longer in danger of losing his testicle. Dorfman reached this conclusion despite two medical tests which indicated blood was still not flowing to Christopher's testicle. Dorfman sent Christopher home at 4 a.m. on the 22nd, rather than performing a surgery called an orchiopexy that would have corrected the bellclapper anomaly in both testicles, and prevented any further possibility of torsion. Christopher saw Dorfman later that same day experiencing no pain, but the following day Christopher woke up with the recurrence of pain and his mother took him back to Dorfman's office. Dorfman rushed him back to the hospital and performed surgery. Christopher's right testicle was dead. Dorfman removed the dead testicle. Shortly thereafter, this medical malpractice action commenced.
Christopher and his parents filed their complaint, alleging that Dorfman had breached the standard of care for a doctor treating a young man presenting with testicular torsion. Originally set for an August 1999 trial, the trial finally took place in September 1999 and lasted four days. The jury returned a verdict in favor of the Schwabls and awarded $675,000.00 in past and future non-economic damages.
Dorfman raises several issues in his appeal. Pursuant to Dorfman's motion in limine, the trial court initially ruled that the Schwabls' counsel could not inquire regarding the five times Dorfman had failed his board certification test prior to treating Christopher. Instead, the trial court determined that the Schwabls' counsel could only establish that Dorfman was not board certified and that he had unsuccessfully taken the board exam. The trial court revisited that decision when Dorfman's counsel made an issue out of one of the Schwabls' experts having failed the board certification test himself, repeatedly addressing the fact that the expert had failed his first board certification test. That questioning, intentionally or not, severely emphasized that the expert had failed his first board certification test.
Under these circumstances, it would have been unfair to limit the examination of Dorfman according to the strictures of the prior ruling, because it would have left the jury with the incorrect impression that Dorfman and this expert were on the same footing as to both having failed the board certification test. By raising and emphasizing the point that this expert had failed his first board certification test, Dorfman opened the door for the testimony regarding Dorfman's having failed the test five times. These physicians' testimonies were going to be compared and contrasted by the jury, and by emphasizing the expert's having failed his first board certification test, Dorfman was tacitly asking the jury to discount his testimony.
Dorfman also complains that he should not have had to admit that he failed the test seven times, as he had only failed the board certification test five times prior to treating Christopher and thus the two subsequent failures were irrelevant. In fact, the trial court ruled that only the five *429 failures should be introduced, and it was defense counsel's inartful question which caused Dorfman to admit to seven failures of the board certification test. Contrary to appellant's self-serving contention that this testimony was the "single most devastating piece of evidence in this case," the seven failures were only briefly referred to during closing argument and did not figure largely in any testimony before the jury. The single most devastating piece of evidence in this case was Christopher Schwabl's condition.
The next issue raised by Dorfman concerns the rule of completeness and a proffer of testimony by Dorfman's expert, Dr. Martin Dineen, that was not admitted by the trial court. According to the proffer, Dineen told the Schwabls' counsel that he could provide Christopher a prosthetic testicle, and that because the prosthesis was part of a study there would be no cost to Christopher if he accepted the offer. Counsel then relayed this conversation to Jeanette Schwabl. Jeanette then testified about the conversation she had with her counsel, the subject matter of which was her counsel's conversation with Dineen, and during her testimony she stated that the prosthesis was experimental.[1] Jeanette did not testify about a conversation she had with Dineen, because she did not have a conversation with Dineen.
Dorfman contends that Dineen should have been allowed to testify that he did not tell the Schwabls' counsel that the prosthesis was experimental, because of the rule of completeness. See Eberhardt v. State, 550 So.2d 102, 105 (Fla. 1st DCA 1989)(when portions of a conversation are admitted, the rule of completeness generally allows admission of the remainder of the conversation "that in fairness [is] necessary for the jury to accurately perceive the whole context of what had transpired..."). Jeanette Schwabl testified about a conversation she had with her counsel; the conversation Dineen had with counsel was not admitted. Therefore, the rule of completeness does not apply, even if the conversation Jeanette had with her counsel concerned the conversation her counsel had with Dineen.[2]Cf. Ramirez v. State, 739 So.2d 568, 580 (Fla.1999), cert. denied, 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000).
The dissent suggests that by rejecting Dr. Dineen's testimony, the trial court denied the jury material evidence on which it could consider the reasonableness of the Schwabls' rejecting the prosthesis. Other experts, however, testified that prosthetic testicles were available and not experimental. Therefore, the jury was aware that non-experimental surgical implantation of a fake testicle was available to Schwabl, even without the proffered testimony.
Next, Dorfman complains on appeal that no evidence of potential infertility, or the fear of potential infertility, should have been introduced into this trial. Dorfman overlooks, as does the dissent, the fact that it was Dorfman's counsel's questions which initially injected this issue into the case. During Dorfman's cross-examination of one of the Schwabls' experts, the questioning led the expert to address the possibility of a loss of fertility because of the lost testicle. For this reason, the court reversed its decision to not allow argument about the fear of possible infertility. The court pointed out that defense counsel did not object to the expert's testimony on possible infertility and the fear of it, nor did defense counsel move to strike it. We cannot find the court erred, *430 when Dorfman raised the issue about which he now complains.
Lastly, Dorfman complains that the Schwabls did not prove disfigurement damages within a reasonable certainty. See Hollins v. Perry, 582 So.2d 786 (Fla. 5th DCA 1991). There was testimony from Christopher and one of the Schwabls' experts as to his disfigurement. More importantly, Dorfman's own expert explained that Christopher was disfigured. Dr. Dineen said in discussing Christopher's disfigurement:
The disfigurement that is referred to comes from removing one of those testicles, and therefore the weight involved, and so the scrotum on that side retracts back up a little bit. It doesn't just hang there like an open paper bag from the grocery store. It pulls back.
And so to the extent that it is an abnormal scrotum based on what 95% of the rest of the world has, it is a disfigurement.
The dissent suggests that Dorfman was "unfairly prevented from fully defending on the issue of disfigurement," but Dorfman does not claim that he was prevented from defending on that issue. His issue on appeal is whether the Schwabls proved the disfigurement damages. We agree with the jury and trial court on that point.
AFFIRMED.
SILVERNAIL, J.P., Associate Judge, concurs.
HARRIS, J., dissents, with opinion.
HARRIS, J., dissenting.
I respectfully dissent.
Although I agree that liability was properly established in this case, I would reverse for a new trial on damages because defendant was unfairly prevented from fully defending on the issue of disfigurement and because damages should not be recoverable merely because of apprehensiveness about a possibility that impotency may result from losing a testicle. This is particularly true because a simple test could determine whether the plaintiff is in fact impotent, and because plaintiff never testified that he suffered any such apprehension.
Plaintiff put on evidence that the lack of a testicle over time led to disfigurement. To avoid the problem of mitigation of damages, and to explain why a prosthetic testicle which would have prevented disfigurement was not implanted, plaintiffs mother was permitted to discuss a conversation plaintiff's counsel had conducted with a defense expert, Dr. Dineen:
Q. [by plaintiff's counsel]: Now, this year did I let you know that I had gotten a call from Dr. Dineen, one of Mr. Dukes' experts in this case, about the availability of an implant?
A. Yes. You told us that he had mentioned that.
Q. And that there are certain centers that are doing these things experimentally?
A. Right. You had mentioned that to Chris.
Q. Is that something Chris will consider?
A. He considered it, we talked about it, but it's still considered experimental and he would like to get more information on it.
Clearly, this line of questioning would mislead the jury into believing that Dr. Dineen advised plaintiffs counsel prior to trial that implanting a prosthetic testicle was performed at only "certain centers" and that such procedure was "experimental." The defense attempted to correct this impression by having Dr. Dineen testify that in his conversation with plaintiffs counsel, he advised plaintiff's counsel that the procedure was safe, that because he was included in a group gathering data for the FDA he had access to a prosthetic testicle, and that he would implant one in plaintiff free of charge. On the whole, I am convinced that it would not disparage, at least substantially, the reputation of *431 either the profession or the courts if lawyers and judges acted fairly and the same fairness that supports the "rule of completeness" supports the introduction of Dr. Dineen's recollection of the conversation. See section 90.108, Fla. Stat. (1999). Only by permitting this testimony would the jury be informed that Dr. Dineen's trial testimony had not changed since he spoke with plaintiff's lawyer. This was an improper and prejudicial impeachment of Dr. Dineen.
The jury, when it considered damages for disfigurement, should have been permitted to consider testimony that at the time plaintiff elected not to undergo the implantation of the prosthesis he, or at least his lawyer, had been advised that the procedure, both safe and free, was available to plaintiff. One must submit to an operation to mitigate damages when "a reasonably prudent person under the circumstances would do so." See Ballard & Ballard v. Pelaia, 73 So.2d 840 (Fla.1954). As stated by the court in Cline v. United States, 270 F.Supp. 247, 252 (S.D.Fla. 1967):
In view of all of the evidence in this case, the Court concludes that the surgical operation which has been prescribed for the Plaintiff by her doctor is not of such a grave and severe nature as to permit her to refuse the operation and at the same time recover damages from Defendant for her continuing pain and suffering. This Court finds and concludes that a reasonably prudent person acting under the facts and circumstances which were developed by the trial of this case would submit to the operation which has been prescribed.
By rejecting this testimony, the court denied the jury material evidence on which it could consider the reasonableness of plaintiff's rejecting the proffered implant.
On the issue of damages based on the fear of a possible problem, plaintiff has the burden of establishing damages by a preponderance of the evidence. He could not have recovered damages in this case for actual infertility unless such infertility was based on reasonable medical probability. See Gup v. Cook, 549 So.2d 1081 (Fla. 1st DCA 1989), quashed in part on other grounds, 585 So.2d 926 (Fla.1991). Here, plaintiffs counsel advised the jury that he was not seeking damages for infertility, perhaps because he was unable to obtain the required evidence. But the court permitted him to ask the jury for damages based on his apprehension that he might possibly be infertile even though the trial testimony does not support it:
Q. [by defense counsel]: But no one's ever told you Chris is going to have any sexual or impotency problems, correct?
A. No.
Q. Do you agree with me?
A. Yes.
In this case, plaintiff never testified that he suffered any apprehension that he might possibly be infertile. Perhaps that is why he neglected to take the simple test which would have answered the question. The majority justifies such damages because one of the experts testified generally about "the possibility of a loss of fertility because of a lost testicle." Not only is this testimony speculative at best as it relates to the plaintiff in this case, but also unless there is some proof that this plaintiff was apprehensive about such "possibility," such damages, even if otherwise appropriate, simply were not proved.
NOTES
[1] Further, parsing Jeanette's testimony on this point shows she never testified that Dr. Dineen said they were experimental. She just declares that the prosthesis was experimental, and only an inference allows the listener to think that Dr. Dineen said that they were experimental.
[2] If appellees' counsel had testified about his conversation with Dr. Dineen and said that Dr. Dineen said the testicles were experimental, then the rule of completeness would apply and would have required that Dr. Dineen be allowed to testify that he never said that. But this is not the case.