MORRIS, Judge.
M.B. appeals a final judgment entered in favor of S.P. and CDMG in her medical malpractice action.[1] M.B. contends that the trial court erred by failing to allow her to introduce evidence that S.P. had repeatedly failed the board certification exam and by failing to disqualify itself and/or grant a mistrial after M.B. discovered that the trial judge wrote a derogatory note about M.B. We affirm on the issue of S.P.’s board certification failures because such evidence was not relevant. However, we agree that M.B. is entitled to a new trial due to the trial judge’s conduct below.
I. Background
In June 2009, M.B. was referred to S.P. after complaining to her primary care physician of unusual cramping and pain and irregular bleeding. S.P. determined that M.B. needed a hysterectomy and ultimately performed a laparoscopically assisted vaginal hysterectomy in July 2009. M.B. returned to the hospital five days after the procedure complaining of acute abdominal pain and discomfort. Tests revealed M.B. had a blocked ureter. Surgery could not be immediately performed due to inflammation. As a result, M.B. had to have a nephrostomy tube inserted, which allowed for urine to drain into an external collection bag, thereby bypassing the damaged ureter. M.B. had to wear the nephrosto-my tube for a three-month period, and during that time, she suffered severe diarrhea, nausea, and vomiting.[2] Eventually, M.B.’s damaged ureter was successfully repaired. However, M.B. testified at trial that she still suffers from dull pain, has increased frequency of urination, and wets herself every night.
There was no dispute that the injury to M.B.’s ureter was a result of the hysterectomy. The issue of negligence was not premised on the fact that M.B.’s ureter was injured during the surgery. Rather, the issue was based on whether S.P.’s failure to conduct one of several tests postop-eratively to check the integrity of M.B.’s ureter, over and above S.P.’s standard visual inspection, constituted negligence. In her complaint, M.B. alleged that she suffered an injury during the hysterectomy as a result of S.P.’s negligence. She further alleged that CDMG, as S.P.’s employer, *361 was vicariously liable for S.P.’s negligent acts.
II. The issue of S.P.’s repeated board certification exam failures
Prior to trial, S.P. filed a motion in limine seeking to prohibit testimony of his repeated failures to pass the board certification exam. The motion was granted. During the trial, M.B. proffered testimony from S.P. acknowledging that it took him seven years to pass the exam and that he passed the written portion of the exam on the fourth try and the oral portion on the third try.[3] Subsequently, S.P. presented expert testimony from two physicians and elicited from both witnesses that they were board certified by the American Board of Obstetrics and Gynecology. After each witness, M.B. renewed her motion to admit evidence of S.P.’s board certification exam history. M.B. also proffered testimony from a deposition of one of S.P.’s expert witnesses wherein the physician opined that a repeated failure to pass a board certification exam could be important to him in determining whether the operating physician was competent. However, the trial court denied the motions, and when M.B. attempted to renew the motion to admit the evidence the following day, the trial court refused to consider it, despite M.B.’s assertion that she had case law to support her position.
We review a trial court’s decision to exclude evidence for abuse of discretion. Dessaure v. State, 891 So.2d 455, 466 (Fla.2004).
The trial court was within its discretion in granting S.P.’s motion in limine prior to trial. Evidence of S.P.’s repeated failures of the board certification exam was not relevant to the issue of his purported negligence in performing the hysterectomy. See, e.g., Campbell v. Vinjamuri, 19 F.3d 1274, 1276-77 (8th Cir.1994) (“[A] person’s performance on a written or oral examination is not determinative of one’s ability to meet the standard of care required on a specific occasion.”); Gipson v. Younes, 724 So.2d 530, 532 (Ala.Civ.App. 1998) (holding that the failure of a physician to pass a test “is irrelevant to the issue.of his negligence in a malpractice case” (citations, omitted)); Marsingill v. O’Malley, 58 P.3d 495, 501 (Alaska 2002) (“[C]ourts generally disfavor admission of evidence showing that a defendant failed board certification tests when that evidence is affirmatively offered to prove lack of professional knowledge or skill.”); Jackson v. Buchman, 338 Ark. 467, 996 S.W.2d 30, 34 (1999) (“[T]he ability or inability to pass examinations has no bearing on the issue of one’s ability to meet the appropriate standard of care on a specific occasion.”); Williams v. Mem’l Med. Ctr., Inc., 218 Ga.App. 107, 460 S.E.2d 558, 560 (1995) (agreeing that the failure of a physician to pass board certification and licen-sure exams “has little if any relevance to the issue of whether the physician complied with the standard of care required in his treatment in a given case” (citation omitted)), abrogated on other grounds recognized by Mullins v. Thompson, 274 Ga. 366, 553 S.E.2d 154 (2001); Dorsey v. Nold, 362 Md. 241, 765 A.2d 79, 84 (2001) (“[T]he general rule is that ‘a physician’s inability to pass a medical board certification exam has little, if any, relevance to the issue of whether the physician complied with the standard of care required in his or her treatment of a patient.’ ” (quoting Gipson, 724 So.2d at 531-32)); Beis v. Dias, 859 S.W.2d 835, 839 (Mo.Ct.App. *362 1993) (“A physician’s inability to pass certification and licensure examinations does not make probable his negligent performance of a specific procedure.”).
But M.B. argues here that because S.P. testified as an expert, the issue of his repeated failures of the board certification exam was relevant to his credibility as an expert. And if S.P. had, in fact, testified as an expert, case law indicates that such evidence would be relevant and admissible. See, e.g., Marsingill, 58 P.3d at 501 (noting that such evidence could be brought out in cross-examination or rebuttal to counteract “affirmative defense evidence introduced to show a special degree of skill, knowledge, or relevant expertise”); Jackson, 996 S.W.2d at 35 (“Evidence of a physician’s lack of board certification may be used to impeach the physician’s credibility as an expert witness.”); Gipson, 724 So.2d at 532 (recognizing that where physician defendant testifies as an expert, the fact that he failed a board certification exam is relevant to his credibility); Babikian v. Mruz, 353 Ill.Dec. 831, 956 N.E.2d 959, 964 (Ill.App.Ct.2011) (recognizing that where a physician testified he met the standard of care in treating the plaintiff, evidence of his lack of board certification would have been admissible); Rockwood v. Singh, 258 Ill.App.3d 555, 196 Ill.Dec. 708, 630 N.E.2d 873, 875 (1993) (recognizing that where a physician testifies as an expert, “evidence as to his age, practice, and like matters relating to his qualifications as an expert is admissible”); McCray v. Shams, 224 Ill. App.3d 999, 167 Ill.Dec. 184, 587 N.E.2d 66, 69 (1992) (holding that where defendant physician testified that he regarded himself as a specialist in the relevant field and he testified about the examination, diagnosis, and treatment of the plaintiff and the reasons why he picked one treatment over another, the issue of his failure to pass board certification exam was relevant); Ward v. Epting, 290 S.C. 547, 351 S.E.2d 867, 872-73 (App.1986) (holding that where physician was asked about separate licensure for specialty, she testified as to routine surgical and recovery room procedures in addition to the circumstances of the case, and she gave her opinion within a reasonable degree of medical certainty as to how the plaintiff was injured, the fact that she was not board certified related to her credibility as an expert witness); Dorsey, 765 A.2d at 84 (recognizing that a physician’s failure to pass a board certification exam is relevant to his or her qualifications as an expert and is therefore admissible where the physician testifies as an expert).
However, in this case, S.P. could only be said to have provided limited expert testimony, if any. S.P. never directly opined that he met the requisite standard of care nor did he opine within a reasonable degree of medical certainty as to the cause of M.B.’s injuries. Rather, during cross-examination, S.P. was asked whether he agreed his actions were below the standard of care required, and he responded that he disagreed with that assertion. In Campbell, the defendant physician provided an almost identical response, and the Eighth Circuit held that this response did not render evidence of the physician’s repeated board certification failures relevant. 19 F.3d at 1277 n. 2. We agree with that reasoning. A physician’s general testimony about his education, training, professional experience, and license to practice in the relevant state is very different from evidence about routine operating room procedures and opinions to a reasonable degree of medical certainty. See Rockwood, 196 Ill.Dec. 708, 630 N.E.2d at 875 (holding that where physician did not testify about routine operating room procedures or offer opinions to a reasonable degree of medical certainty, his testimony “was not used to show the standards of *363 medical care associated with such surgery[ ] but[,] rather, was used to relate to the jury what occurred before, during, and after the surgery” and that therefore, the circuit court correctly barred evidence of his board certification status); Beis, 859 S.W.2d at 839 (holding that where physician’s testimony was limited to his education, training, professional experience, and license to practice medicine in Missouri and physician did not offer evidence of his intellect, grades, superior ability to pass examinations, special licenses, or academic honors, his failure to pass the board certification exam was not relevant).
S.P. did not testify about any special expertise, special licenses, or academic honors he received. And while he did testify about some matters of routine, that testimony, when viewed in context, reflects that he was explaining why he did or did not do certain things while treating M.B. Consequently, we find that S.P. merely related what happened before, during, and after the surgery, and therefore, we hold that his testimony did not make his repeated failures of the board certification exam relevant.
Citing Dorfman v. Schwabl, 777 So.2d 427 (Fla. 5th DCA 2000), M.B. also asserts that S.P. opened the door to the evidence once he qualified his expert witnesses by eliciting testimony about their board certification. We are not persuaded by that argument. In Dorfman, the defendant physician’s motion in limine was granted prior to trial, thereby preventing the plaintiff from introducing evidence of the physician’s repeated failure of the board certification exam. However, during trial, the defendant physician’s counsel raised the issue of the plaintiffs expert’s having failed the board certification exam. The Fifth District determined that at that point, it was proper for the trial court to permit the evidence of the defendant physician’s repeated failures of the board certification exam because the testimony of the physicians was going to be compared and the defendant physician was tacitly asking the jury to discount the plaintiffs expert’s testimony. Id. at 428.
But in this case, S.P. did not challenge the board certification status of M.B.’s expert witness, despite the fact that M.B.— like S.P. — qualified her expert witness by inquiring whether he was board certified. Thus there was no “tacitly asking the jury to discount” M.B.’s expert’s testimony as there was in Dorfman.
The issue of whether S.P. opened the door involves determining whether inquiring about an expert witness’s board certification renders a defendant’s board certification status relevant. We are not convinced that Dorfman fully and accurately analyzed, this issue. First, Dorf-man did not explain how it made the leap from inquiring about an expert’s lack of board certification to permitting an inquiry into a defendant’s lack of board certification. Clearly, if a defendant presents his own expert and during direct examination opens the door to questioning about board certification, then that expert’s lack of board certification is a relevant topic for the plaintiff to explore. See Nelson v. Waxman, 9 S.W.3d 601, 604 (Mo.2000) (holding that where plaintiff presented expert witness to establish that physician breached standard of care and, in establishing witness’s credentials, plaintiff inquired about board certification, plaintiff' opened the door for defendant to explore witness’s lack of board certification for specialty). But Dorfman cited no authority for its holding that the defendant physician’s lack of board certification became relevant simply because the physician inquired about an expert’s lack of board certification.
*364 It is possible that the Dorfman court reached its holding on the basis that the defendant physician was testifying as an expert himself. However, the opinion does not make that clear. And if the defendant physician did not provide expert testimony, evidence of his repeated board certification failures would not be relevant as to either the issue of negligence or to the defendant physician’s credibility as an expert, at least according to the consensus of case law from other jurisdictions.
Moreover, the fact that the Dorfman court found no error in the trial court’s permitting an inquiry into the defendant physician’s lack of board certification does not mean that the converse is true in this ease. It simply does not follow that a trial court abuses its discretion when it decides not to permit such evidence. See Campbell, 19 F.3d at 1277 (rejecting argument that just because one court found it was not an abuse of discretion for a trial court to admit evidence of a physician’s test failures, then it was an automatic abuse of discretion not to admit such evidence).
Finally, we note that even if the trial court erred by refusing to permit an inquiry into S.P.’s repeated board certification failures, it was not reversible error. This is due to the fact that other witnesses opined that S.P. met the standard of care. Id. (concluding that admission of physician’s test failures would not necessarily have resulted in different verdict where other expert witnesses testified about whether physician met the standard of care); Jackson, 996 S.W.2d at 36 (concluding that no prejudice arose from trial court’s refusal to allow plaintiff to inquire about physician’s lack of board certification to rebut his credibility as a witness where the record reflected that several other physicians opined that defendant physician met the standard of care).
Although we hold that M.B. is not entitled to relief on this issue, we conclude that she is entitled to a new trial before a different judge due to the trial judge’s conduct as explained below.
III. The trial court’s failure to disqualify itself or grant a mistrial
During M.B.’s testimony at trial, she was asked to describe having to live with a nephrostomy tube and urine bag. M.B. began to explain but after providing some extensive details, S.P. and CDMG’s counsel interrupted and asked to approach the bench. During the bench conference, S.P. and CDMG’s counsel objected to M.B.’s. providing a narrative response and asked the trial court to “instruct the witness not to refer to incontinence.” M.B.’s counsel conceded that M.B. was providing a “long answer,” and at that point, the trial court commented, “It is. I’m bagged out.”
Later, during a sidebar, M.B.’s attorney saw a note affixed to the verdict form lying on the trial court bench. The note read: “Bag lady with shits (full of). Barfer, too.” M.B.’s counsel immediately moved for a mistrial on the basis of the note. The trial court initially acknowledged the note, then retracted and stated “I don’t have it. Gone.” But the trial court then continued by asserting that “[wjhat notes I take up here are absolutely no business of counsel’s” and that “[i]f I sit here and do crossword puzzles, it’s none of your damn business either.” The trial court then told M.B.’s counsel that if he [M.B.’s counsel] was trying to “get [the trial court] riled up ... you’re doing very well.” The trial court denied the motion for mistrial. M.B.’s counsel then moved to have the trial judge recuse[4] himself which was also *365 denied. After a recess, M.B. renewed her motions for mistrial and for recusal of the trial judge. At that point, the trial court stated:
The scribbles I make up here are my sarcastic comments that stay with me, they don’t go anyplace [sic] else. I am not noted for being the most outwardly friendly person in the world and I do make some fairly critical notes that nobody should have even looked at up here[ ] and they had nothing to do with anything. And nobody sees them except people who look over the top of the desk.
Eventually, the trial resumed and the jury returned a verdict in favor of S.P. and CDMG. M.B. renewed her motion for mistrial based on the trial court’s note and comments. However the motion was denied. M.B. then filed written motions for a new trial and to disqualify the trial judge. The trial court denied the motions but on the same day sent a letter to M.B.’s counsel, wherein the trial court reiterated that “what is on my bench is of no business to anyone in the courtroom” and asserting that “there was nothing said or mentioned to the jury that was inappropriate.”
In determining whether to grant a motion to disqualify, a trial court must decide whether the motion is legally sufficient, i.e., “whether the facts alleged, which must be assumed to be true, would cause the movant to have a well-founded fear that he or she will not receive a fair trial at the hands of that judge.” Gore v. State, 964 So.2d 1257, 1268 (Fla.2007) (citing Fla. R. Jud. Admin. 2.330(d)(1)); see also Chamberlain v. State, 881 So.2d 1087, 1097 (Fla.2004). “The motion to disqualify ‘must be well-founded and contain facts germane to the judge’s undue bias, prejudice, or sympathy.’” Chamberlain, 881 So.2d at 1097 (quoting Wright v. State, 857 So.2d 861, 873 (Fla.2003)). Because the issue of whether a motion is legally sufficient is a matter of law, we review the trial court’s decision de novo. See id.
Generally, the standard of review for a ruling on a motion for mistrial is abuse of discretion. Perez v. State, 919 So.2d 347, 363 (Fla.2005) (citing Goodwin v. State, 751 So.2d 537, 546 (Fla.1999)). However, where the ruling is based on an error of law, such as a judge’s failure to disqualify himself, a de novo standard applies. See Krolick v. Monroe ex rel. Monroe, 909 So.2d 910, 913 (Fla. 2d DCA 2005); Probkevitz v. Velda Farms, LLC, 22 So.3d 609, 614 (Fla. 3d DGA 2009) (both holding that where an error of law occurs in the denial of a motion for new trial, the de novo standard applies).
The motion in this case clearly met the requirements of rule 2.330(d)(1). We hold that the comments made by the trial judge, in addition to the trial judge’s written note, caused M.B. to have a well-founded fear that she would not receive a fair and impartial trial.
The very foundation of our system of justice mandates 'that judges be completely neutral and impartial. See State ex rel. Davis v. Parks, 141 Fla. 516, 194 So. 613, 615 (1939). Litigants have the right to have their cases heard in a “[calm] and dispassionate environment before an impartial judge and have their rights adjudicated in a fair and just manner.” Williams v. State, 143 So.2d 484, 488 (Fla.1962). It can hardly be said that the trial judge’s comments and note in .this case *366 reflected a “calm and dispassionate environment.” Quite the contrary, the comments reflected a bias or prejudice against M.B., thereby rendering the entirety of the proceedings fundamentally unfair. See Alamo Reni-A-Car v. Phillips, 618 So.2d 56, 57-58 (Fla. 1st DCA 1992).
IV. Conclusion
Based on the trial judge’s conduct below, M.B. did not receive a fair trial before an impartial judge. She is therefore entitled to a new trial before a different judge. Accordingly, we reverse and remand for proceedings in conformance herewith.
Reversed and remanded.
CASANUEVA and WALLACE, JJ., Concur.

. We use pseudonyms for all parties to protect the patient's, M.B.’s, privacy.

. There was testimony that M.B. suffered from urine sepsis which causes vomiting. And several physicians opined that diarrhea and vomiting were a potential consequence of M.B.’s illness and surgical complications.

. The proffer was made to preserve the record for appeal, and therefore, the trial court did not make a ruling at that point.

. Although M.B.’s counsel used the term "re-cuse," it was clear he was seeking a disquali *365 fication of the trial judge. See Sume v. State, 773 So.2d 600, 601-02 (Fla. 1st DCA 2000) (explaining that recusal is the process whereby a trial judge removes himself, whereas disqualification is the process by which a party seeks to remove a trial judge from the case). ■ ’